1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Harry A. Olivar, Jr. (SBN 143089)
2      harryolivar@quinnemanuel.com
      Valerie Roddy (SBN 235163)
3      valerieroddy@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
4   Los Angeles, California  90017-2543
    Telephone:    (213) 443-3000
5   Facsimile:    (213) 443-3100

6   *Attorneys for Defendants*

7

8

9                   UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12

13   LEE VOSS, SEBASTIANO D'ARRIGO,        Lead Case No. 14-cv-1581 LHK (HRL)
     JAMES DIBIASE, and MARIE DIBIASE, on  (Consolidated with Case Nos. 14-cv-2523
14   behalf of themselves and all others similarly  LHK (HRL) and 14-cv-3214 LHK (HRL))
     situated and derivatively on behalf of
15   MARVELL TECHNOLOGY GROUP, LTD.,        **DEFENDANTS' NOTICE OF MOTION
                                            AND MOTION TO DISMISS
16                      Plaintiffs,         PLAINTIFFS' COMPLAINT PURSUANT
                                            TO FED. R. CIV. P. 12(B)(1), 12(B)(6),
17            v.                            AND 9(B);**

18   SEHAT SUTARDJA, JUERGEN GROMER,        **MEMORANDUM OF POINTS AND
     JOHN G. KASSAKIAN, ARTURO             AUTHORITIES IN SUPPORT THEREOF**
19   KRUEGER, RANDHIR THAKUR, PANTAS
     SUTARDJA, WEILI DAI, and DOES 1-20,    [Request for Judicial Notice, Appendix of
20                                          Foreign Authorities, and Declarations of Carol
                        Defendants,         Feathers, Martin Moore QC, and Alexander
21                                          Potts filed concurrently herewith]
              – and –
22                                          Hearing Date:   November 20, 2014
     MARVELL TECHNOLOGY GROUP, LTD.,        Hearing Time:   1:30 p.m.
23                                          Courtroom:      8
                   Nominal Defendant.
24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on November 20, 2014 at 1:30 p.m., in Courtroom 8 of the United States District Court for the Northern District of California, San Jose Division, 280 South 1st Street, San Jose, California, nominal defendant Marvell Technology Group, Ltd. ("Marvell" or "the Company") and defendants Sehat Sutardja, Juergen Gromer, John G. Kassakian, Arturo Krueger, Randhir Thakur, Pantas Sutardja, and Weili Dai (the "Individual Defendants" and, with Marvell, "Defendants") will and hereby do move this Court to dismiss the Verified Consolidated Shareholder Derivative and Class Action Complaint ("Complaint" or "Compl.") filed by plaintiffs Lee Voss, Sebastiano D'Arrigo, James DiBiase, and Marie DiBiase. This motion is made pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure and is based upon the following Memorandum of Points and Authorities; the concurrently-filed Request for Judicial Notice, Appendix of Foreign Authorities, and Declarations of Carol Feathers, Alexander Potts, and Martin Moore QC; the files and records in this action; and any such additional argument or materials as may be submitted to the Court before the time of the decision in this matter.

**STATEMENT OF RELIEF SOUGHT**

Defendants seek an order dismissing each of the Complaint's four causes of action with prejudice for lack of subject matter jurisdiction, for failure to state a claim upon which relief can be granted, and for failure to plead fraud with the requisite particularity.

DATED: September 4, 2014         QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP


                                 By  */s/ Harry A. Olivar, Jr.*
                                 Harry A. Olivar, Jr.
                                 *Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

PRELIMINARY STATEMENT ..................................................................................... 1

RELEVANT FACTUAL BACKGROUND ..................................................................... 3

ARGUMENT ................................................................................................................ 8

I.      NEITHER PLAINTIFFS' PURPORTED INJURIES NOR THE ALLEGED
        WRONGS SUPPORT A DIRECT CLAIM ......................................................... 8

II.     PLAINTIFFS' COMPLAINT DOES NOT MEET THE SETTLED
        REQUIREMENTS FOR A SHAREHOLDER DERIVATIVE ACTION ......................... 11

        A.      Plaintiffs Must Demonstrate That Their Claims Fall Within One of the
                Narrow Exceptions to the "Rule in *Foss*" to Maintain a Derivative Claim
                Against the Individual Defendants ..................................................... 11

        B.      Plaintiffs Have Not Alleged *Ultra Vires* Conduct ................................... 13

        C.      Plaintiffs Have Not Alleged the Control or Self-Dealing Required to Bring
                This Case Within the Fraud on the Minority Exception ......................... 14

        D.      Plaintiffs Have Not Alleged That Defendants Infringed upon Plaintiffs'
                Personal Rights ............................................................................... 17

III.    PLAINTIFFS HAVE FAILED TO PLEAD ANY CONDUCT BY DEFENDANTS
        THAT COULD BE A BASIS FOR LIABILITY UNDER MARVELL'S
        CHARTER .................................................................................................... 18

IV.     PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO
        PLEAD "FRAUD OR DISHONESTY" WITH PARTICULARITY ............................... 22

CONCLUSION ........................................................................................................... 24

1

**TABLE OF AUTHORITIES**

2

**Page**

3

<span style="text-decoration: underline">UNITED STATES</span>

4

<span style="text-decoration: underline">Cases</span>

5
*In re Actimmune Mktg. Litig.,*
6    C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009),
     *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ...................................................................22

7
*In re AlphaStar Ins. Grp. Ltd.,*
     383 B.R. 231 (Bankr. S.D.N.Y. 2008) ......................................................................22
8

9
*In re Am. Apparel S'holder Litig.,*
     855 F. Supp. 2d 1043 (C.D. Cal. 2012) ......................................................................4

10
*Ashcroft v. Iqbal,*
     556 U.S. 662 (2009) ...................................................................................................23
11

12
*Batchelder v. Kawamoto,*
     147 F.3d 915 (9th Cir. 1998) .....................................................................................11

13
*In re CNET Networks, Inc.,*
     483 F. Supp. 2d 947 (N.D. Cal. 2007) ........................................................................4
14

15
*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,*
     CIV. A. 09-290, 2014 WL 1320154 (W.D. Pa. Mar. 31, 2014) ..............................4, 6

16
*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,*
     986 F. Supp. 2d 574 (W.D. Pa. 2013) .......................................................................5, 6
17

18
*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
     No. 12-CV-06039-WHO, 2013 WL 6441843 (N.D. Cal. Dec. 9, 2013) .....................4

19
*City of Harper Woods Employees' Ret. Sys. v. Olver,*
     589 F.3d 1292 (D.C. Cir. 2009) .................................................................13, 14, 16
20

21
*In re Cylink Sec. Litig.,*
     178 F. Supp. 2d 1077 (N.D. Cal. 2001) ....................................................................21

22
*Daily Income Fund, Inc. v. Fox,*
     464 U.S. 523 (1984) ...................................................................................................11
23

24
*In re Ditech Networks, Inc. Derivative Litig.,*
     C 06-5157 JF, 2008 WL 820705 (N.D. Cal. Mar. 26, 2008) ...................................22

25
*Erie Cnty. Emps. Ret. Sys. v. Isenberg,*
     CIV. A. H-11-4052, 2012 WL 3100463 (S.D. Tex. July 30, 2012) ....................15, 22
26

27
*Eshelman v. OrthoClear Holdings, Inc.,*
     C 07-1429 JSW, 2008 WL 171059 (N.D. Cal. Jan. 18, 2008) .................................10

28

1   *Feiner Family Trust v. VBI Corp.,*
       07 CIV. 1914, 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007) ...................................10
2
3   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
       528 U.S. 167 (2000) .......................................................................................................10
4   *In re Hansen Natural Corp. Sec. Litig.,*
       527 F. Supp. 2d 1142 (C.D. Cal. 2007)......................................................................19
5
6   *In re Hecla Min. Co. Derivative S'holder Litig.,*
       2:12-CV-00097-REB, 2014 WL 689036 (D. Idaho Feb. 20, 2014).........................21
7   *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.,*
       98 F. Supp. 2d 480 (S.D.N.Y. 2000) .........................................................................19
8
9   *Kona Enters., Inc. v. Estate of Bishop,*
       179 F.3d 767 (9th Cir. 1999)........................................................................................9
10  *Krottner v. Starbucks Corp.,*
       628 F.3d 1139 (9th Cir. 2010).....................................................................................10
11
12  *Laborers' Local v. Intersil,*
       868 F. Supp. 2d 838 (N.D. Cal. 2012) .......................................................................11
13  *Lapidus v. Hecht,*
       232 F.3d 679 (9th Cir. 2000).........................................................................................8
14
15  *Lazy Y Ranch Ltd. v. Behrens,*
       546 F.3d 580 (9th Cir. 2008).........................................................................................3
16  *Lee v. City of Los Angeles,*
       250 F.3d 668 (9th Cir. 2001).........................................................................................4
17
18  *Mazza v. Am. Honda Motor Co., Inc.,*
       666 F.3d 581 (9th Cir. 2012).......................................................................................11
19  *Reiger v. Price Waterhouse Coopers LLP,*
       117 F. Supp. 2d 1003 (S.D. Cal. 2000), *aff'd*, 288 F.3d 385 (9th Cir. 2002) ...........19
20
21  *In re Sagent Tech., Inc., Derivative Litig.,*
       278 F. Supp. 2d 1079 (N.D. Cal. 2003) .....................................................................21
22  *Sarandi v. Breu,*
       C 08-2118 SBA, 2009 WL 2871049 (N.D. Cal. Sept. 2, 2009)................................13
23
24  *In re Stac Elecs. Sec. Litig.,*
       89 F.3d 1399 (9th Cir. 1996).......................................................................................21
25  *Swartz v. KPMG LLP,*
       476 F.3d 756 (9th Cir. 2007).......................................................................................23
26
27  *In re Tyco Int'l, Ltd.,*
       340 F. Supp. 2d 94 (D.N.H. 2004) .................................................12, 13, 14, 16, 17
28

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ........................................................................22

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ............................................................................4

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................22

*In re Watchguard Sec. Litig.*,
   No. C05-678LR, 2006 WL 2927663 (W.D. Wash. Oct. 12, 2006) ........................................19

*Winn v. Schafer*,
   499 F. Supp. 2d 390 ........................................................................16

### Statutes

Fed. R. App. P. 4(a)(3) ........................................................................6

Fed. R. Civ. P. 9(b) ........................................................................1, 3, 22, 23

Fed. R. Civ. P. 12(b)(1) ........................................................................13

Fed. R. Civ. P. 23.1(b)(3) ........................................................................15

### State

### Cases

*Jasmine Networks, Inc. v. Marvell Semiconductor, Inc.*,
   No. H036684, 2013 WL 3776188 (6th Dist. July 17, 2013) ........................................7, 8

*Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*,
   863 A.2d 772 (Del. Ch. 2004) ........................................................................18

*Vaughn v. LJ Int'l, Inc.*,
   174 Cal. App. 4th 213 (2d Dist. 2009) ........................................................................11

### Statutes

Cal. Corp. Code § 2116 ........................................................................11

Delaware General Corporations Law § 102(b)(7) ........................................................................18

### International

### Cases

*Clark v Energia Global Ltd*,
   [2002] Bda LR 39 ........................................................................14

*Edwards v. Halliwell,*
  [1950] 2 All E.R. 1064 ........................................................................12

*Foss v Harbottle,*
  [1843] 2 Hare 461 ..............................................................................11

*Johnson v Gore Wood & Co,*
  [2002] 2 AC 1 .......................................................................................9

*Peskin v. Anderson,*
  [2001] 1 B.C.L.C. 372 .......................................................................10

*Prudential Assurance Co Ltd v Newman Industries Ltd (No. 2),*
  [1982] 1 Ch. 204 ........................................................................9, 12, 13

## <u>Statutes</u>

Bermuda Companies Act 1981 § 98 ........................................................18

## <u>Other Authorities</u>

11 Fletcher Cyc. Corp. § 5321 (Supp. 2014) .......................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

### Statement of Issues to Be Decided

1.     Whether, under applicable Bermuda law, plaintiffs may pursue direct claims given that plaintiffs' claimed injuries are purely reflective of potential losses to the Company arising from alleged breaches of fiduciary duties owed solely to the Company.

2.     Whether plaintiffs have standing under applicable Bermuda law to pursue derivative claims given that the Individual Defendants are not alleged or shown to have exceeded the powers granted them by Marvell's Memorandum of Association, to control a majority of Marvell's voting rights, or to have engaged in self-dealing.

3.     Whether plaintiffs have pleaded any actionable conduct by the Individual Defendants where, as permitted by Bermuda law, Marvell's Third Amended Bye-Laws (the "Bye-Laws") protect the Company's directors and officers from individual liability for conduct that does not amount to fraud or dishonesty.

4.     Whether plaintiffs' Complaint complies with the pleading requirements of Federal Rule of Civil Procedure 9(b) given its failure to attribute specific, individual knowledge of any alleged impropriety to any of the Individual Defendants.

### Preliminary Statement

Plaintiffs' untenable theory boils down to this: A jury found Marvell liable to Carnegie Mellon University ("CMU") for willful patent infringement.  According to plaintiffs, the current and former Marvell directors and officers named as defendants failed to prevent the litigation loss: they failed to stop Marvell's production of the products alleged to infringe, failed to settle the lawsuit instead of defending it, and failed to tell shareholders before trial that Marvell was infringing CMU's patents (a conclusion Marvell has always viewed as incorrect and indefensible and, along with other findings of the trial court, has asked the Federal Circuit to address on appeal).  Plaintiffs claim that each named officer and director is thus personally liable to Marvell for the amount of any judgment Marvell ultimately pays, or more.

Of course, if such a flawed theory were recognized by the law, officers and directors would face an impossible dilemma every time the companies they serve were sued: Settle every claim, no

1   matter how meritless, or face personal liability for any adverse judgment.  Any judgment against a

2   corporation could result in hindsight allegations that its Board of Directors "failed to prevent" the

3   underlying conduct, should have litigated the case differently, and should have disclosed as *facts*

4   in its public filings the unproven allegations of its adversary.  That is the sum total of plaintiffs'

5   claims, notwithstanding the colorful irrelevancies that pad their 70-page Complaint.

6          Fortunately, the law does not support plaintiffs' theory.  Instead, it erects several barriers to

7   individual shareholders' attempts, such as these, to second-guess the judgment a company's

8   officers and directors applied in defending a lawsuit and in making other corporate governance

9   decisions.  That plaintiffs' Complaint fails to clear these established legal hurdles requires its

10  dismissal.

11         First, applicable Bermuda law does not permit shareholders to assert a company's claims

12  directly as their own where, as here, the plaintiffs' purported injury reflects a purported injury to

13  the company.  The patent verdict, to the extent it is upheld, obviously would be an injury to the

14  Company.  Plaintiffs' allegation that dividends Marvell has declared and paid on a quarterly basis

15  since 2012 are "threatened" by the patent verdict does not give rise to a direct claim.

16  Compounding the problem, plaintiffs' direct injury allegations are demonstrably false: The

17  dividends that plaintiffs claim are "threatened" actually have been paid (they were paid before

18  plaintiffs filed suit) and continue to be paid.  Even if allegations of diminished dividend payment

19  by a company could give rise to a direct claim (they cannot), hypothetical future threats to

20  discretionary dividend payments cannot confer direct shareholder standing.  And in addition to

21  plaintiffs lacking standing to assert direct claims, the fiduciary duties plaintiffs allege were

22  breached are owed to the Company, not to plaintiffs, which also precludes any direct claim.

23         Second, Bermuda law permits shareholders to litigate a company's claims derivatively

24  only in rare circumstances, and those circumstances are not present here.  There is a strong

25  presumption that the Company, not individual shareholders, should make decisions regarding the

26  Company's purported claims.  Because approximately 80% of Marvell's shares are *not* owned or

27  controlled by the Individual Defendants, Marvell's shareholders can elect to pursue any claims

28  they may deem meritorious by majority vote.  Under applicable law, there is no basis for plaintiffs

CASE NO. 14-CV-1581-LHK (HRL)
MOTION TO DISMISS PLAINTIFFS' COMPLAINT

to substitute their own judgment about the wisdom of bringing the Company's claims for the Company's judgment or the majority's judgment, absent specified exceptions that plaintiffs cannot satisfy.  (That in purporting to litigate claims "for" the Company plaintiffs are *embracing* the adverse *CMU* judgment at the same time the Company is telling the Federal Circuit it is baseless illustrates the wisdom of this rule.)

Third, plaintiffs' claims—whether direct or derivative—are also barred by Marvell's bylaws, under which Marvell's shareholders have waived all claims against the Company's officers and directors for conduct that does not amount to "fraud or dishonesty."  Even accepting plaintiffs' allegations as true for the limited purpose of this motion, failing to prevent patent infringement, or losing a patent litigation matter at the trial court level, is not fraud or dishonesty.  And acceptance of incentive compensation is not retroactively rendered fraudulent simply because an adverse litigation judgment *may* later offset prior company profits on which the incentive compensation was based.  Plaintiffs' claims should be dismissed for this additional reason.

Finally, although the above defects defeat plaintiffs' claims, are incurable, and warrant dismissal with prejudice, plaintiffs' Complaint is also deficient in another way: Because plaintiffs can assert claims *only* for conduct that amounts to fraud or dishonesty, any claim they could bring sounds in fraud and must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure, a standard plaintiffs have failed to meet.  This pleading requirement, designed to reduce the number of meritless strike suits such as this one, is perhaps less important than the major substantive defects noted above, but it also warrants dismissal.

<u>Relevant Factual Background</u>

For purposes of this motion only (and although they vigorously dispute the Complaint's accuracy), Defendants accept as true the non-conclusory allegations of the Complaint, except as refuted by judicially noticeable documents cited herein.  *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (court "need not accept as true allegations contradicting documents

1    that are referenced in the complaint or that are properly subject to judicial notice"); *United States*

2    *v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (same).[1]

3         <u>Parties.</u>   Nominal defendant Marvell is a publicly traded fabless semiconductor company

4    that designs and develops a wide variety of integrated circuit devices.   Compl. ¶¶ 16, 48.   The

5    Individual Defendants are current and former individual officers and directors of Marvell.

6    Defendant Sehat Sutardja is CEO and Chairman of the Board, *id.* ¶ 17; defendant Weili Dai is

7    President.   *Id.* ¶ 23.   They co-founded Marvell together with defendant Pantas Sutardja, a former

8    officer and director, in 1995.   *Id.* ¶ 20 & Ex. 1 at 4.   Defendants Gromer, Kassakian, Krueger, and

9    Thakur are non-employee outside directors.   *See generally id.* ¶¶ 18-19, 21-22.   Collectively, the

10   Individual Defendants own and control approximately 20% of Marvell's stock.   *See, e.g.*, Request

11   for Judicial Notice, filed concurrently herewith ("RJN") Ex. A at 32, Ex. B at 1, Ex. C at 1, Ex. D

12   at 1 & Ex. E at 1.   Plaintiffs Lee Voss, Sebastiano D'Arrigo, and James and Marie DiBiase allege

13   that they are Marvell shareholders who have continuously held Marvell common stock since at

14   least 2008, 2000, and 2006, respectively.   Compl. ¶¶ 13-15.   Plaintiffs allege that they collectively

15   own approximately 23,425 of Marvell's 503.4 million outstanding shares (or less than 0.005%).

16   *Id.* ¶¶ 13-15, 142.

17        *CMU* Litigation.   As plaintiffs concede, their claims are based almost entirely on the jury

18   verdict and subsequent district court judgment in *Carnegie Mellon University v. Marvell*

19   *Technology Group, Ltd.*, No. Civ. 09-290, a patent infringement lawsuit filed in 2009 in the

20   United States District Court for the Western District of Pennsylvania.   *See, e.g.*, Compl. ¶ 50

21   ("This action involves the defendants' dishonesty and lack of candor with respect to willful

22   infringement of patents held by CMU.").   Plaintiffs contend that the Individual Defendants, as

23

24        [1]  Of particular relevance here, the Court may take judicial notice of other courts' rulings, *see*
25   *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), of stock histories, *see City of*
     *Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, No. 12-CV-06039-WHO,
26   2013 WL 6441843, at *5 (N.D. Cal. Dec. 9, 2013), and of the contents of SEC filings, *see In re*
     *CNET Networks, Inc.*, 483 F. Supp. 2d 947, 953-54 (N.D. Cal. 2007); *In re Am. Apparel S'holder*
27   *Litig.*, 855 F. Supp. 2d 1043, 1060-62 (C.D. Cal. 2012).

28

current and former officers and directors of Marvell, injured Marvell and its shareholders by causing Marvell to engage in willful patent infringement, failing to prevent willful patent infringement, failing to disclose willful patent infringement to shareholders, losing the litigation, and earning incentive-based compensation based on revenues that allegedly were inflated by willful infringement. *See, e.g.*, Compl. ¶¶ 1, 9, 170, 173, 184.

On December 26, 2012, a jury found that Marvell had willfully infringed two claims of two of CMU's patents and awarded damages to CMU of $1,169,140,271.00. *See, e.g., Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 986 F. Supp. 2d 574, 598 (W.D. Pa. 2013) ("*CMU I*"). Marvell maintains the trial court's findings are unsupported by the law and the evidence adduced at trial and is challenging the judgment on appeal to the Federal Circuit. *See, e.g.*, RJN Ex. F (Notice of Appeal, *CMU* Dkt. 952), Ex. G (*CMU* Docket Sheet) & Ex. H (Marvell's Opening Brief in *CMU* Appeal). Because of the central role of the *CMU* litigation, Defendants briefly recount certain judicially noticeable findings and recent developments in that litigation that are of particular relevance to plaintiffs' claims:

Willfulness Finding. The trial court finding that any infringement by Marvell was "willful" did not conclude that any of the Individual Defendants had intentionally infringed, or had intentionally caused Marvell to infringe, CMU's patents. Rather, the district court's two-part analysis adopting the jury's advisory verdict of willfulness concluded that (1) "Marvell acted in disregard of an objectively high likelihood that its actions constituted infringement of a valid patent," *CMU I*, 986 F. Supp. 2d at 632; and (2) Marvell "acted in a subjectively reckless manner" and "knew or should have known about the substantial risk of infringement." *Id.* at 633. The district court's analysis focused on the conduct of Marvell engineers Gregory Burd, "the developer of the Accused Technology," Zining Wu, and Toai Doan, and Marvell's alleged "failed opportunities to investigate," alleged "lack of action by Marvell's employees," and the Company's alleged "lack of inquiry." *See, e.g., id.* at 624-25 (describing these employees' alleged failures to investigate risk of infringement). The court's only reference to any of the Individual Defendants in assessing willfulness was a statement that Pantas Sutardja had received a letter from CMU "enclosing copies of the patents and inquiring if there was an interest in [them]" and a statement

1   that Sehat Sutardja had testified that the Company did not respond to that letter because it was not

2   interested in using CMU's technology in Marvell's chips.  *Id.* at 624; *see also id.* at 594, 612.[2]

3        *CMU* Judgment.  On May 7, 2014, the court entered final judgment in the CMU litigation

4   in the total amount of $1,535,889,387.60.  Compl. ¶ 2 & n.1.  On May 14, 2014, Marvell filed a

5   notice of appeal to the Federal Circuit and posted a supersedeas bond pending resolution of that

6   appeal.  *See, e.g.*, RJN Exs. F & I (Dkt. Nos. 950 & 952).  CMU did not file a timely notice of

7   cross-appeal of any issue, including the district court's rejection of its bid for treble damages.  *See,*

8   *e.g.*, RJN Ex. G; Fed. R. App. P. 4(a)(3).  Marvell's opening brief on its Federal Circuit appeal

9   was filed August 5, 2014.  *See generally* RJN Ex. H.

10       Effect of the CMU Litigation on Marvell's Financial Performance.  Plaintiffs make

11  numerous speculative allegations about what financial impact the CMU litigation will have on

12  Marvell and its stock.  Specifically, plaintiffs allege that the CMU judgment "has impaired or may

13  impair [Marvell's] ability to pay future dividends to its shareholders," relying on typical

14  cautionary disclosure language in Marvell's February 24, 2014 8-K.  *See, e.g.*, Compl. ¶¶ 5, 135.

15  But in reality, Marvell *did* pay the referenced dividend on March 27, 2014, as previously

16  declared.[3]  *See, e.g.*, RJN Ex. J.  Although plaintiffs did not file the operative Complaint until

17  August 15, 2014, and assuming minimal investigation were aware that Marvell had actually paid

18  the referenced dividend, plaintiffs nevertheless quote repeatedly the 8-K's statement that

19  "[d]evelopments in the CMU litigation could affect Marvell's ability to pay the dividend on March

20  27, 2014 under Bermuda law" in claiming that Marvell's ability to pay dividends "may" be

---

[2]  The court's analysis in assessing the damages multiplier was similar: It attributed allegedly deliberate copying of the asserted patents to engineer Burd, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, CIV. A. 09-290, 2014 WL 1320154, at *11-12 (W.D. Pa. Mar. 31, 2014) ("*CMU II*"), and focused on the engineers' failure to investigate.  *See, e.g., id.* at *13 (noting purported lack of evidence "that anyone at Marvell investigated the scope of the patents vis-à-vis its simulators or production of Accused Chips" or "as to the scope of the investigation, if any, which was conducted by its attorneys and/or engineers [including Wu and Burd]").

[3]  Marvell also paid dividends on July 2, 2014.  *See, e.g.*, RJN Ex. J.  Marvell has never failed to declare or pay a quarterly dividend since it first began declaring quarterly dividends in 2012. *Id.*

impaired.  *See, e.g.*, Compl. ¶¶ 5, 135, 155.  Similarly, although plaintiffs quote extensively from the disclosures in Marvell's most recent 10-K to claim that the verdict has "a high probability of materially and adversely affecting Marvell and its cash flows," they neglect to reference Marvell's statements in the same filing that it "do[es] not believe a material loss is probable" or that, accordingly, Marvell has yet to record any liability on its balance sheet for the CMU litigation.  *See, e.g.*, RJN Ex. A at 91.

      <u>Irrelevant Allegations Regarding Other Litigation.</u>  Plaintiffs devote several pages of their Complaint to a purported "review of defendants' past wrongdoing at Marvell" that plaintiffs wrongly contend is "illuminating."  *See* Compl. ¶ 51; *see generally id.* ¶¶ 52-77.  This "prior bad acts" section of the Complaint actually has no relevance to any current claim:

      *First*, plaintiffs recount alleged pre-2007 options backdating by Marvell that, by plaintiffs' own admission, has already been the subject of resolved shareholder litigations that concluded with Court-approved class settlements and a fully-resolved SEC action.  *Id.* ¶¶ 52-63.

      *Second*, plaintiffs imply that Marvell's handling of its internal investigation of the same fully-litigated options backdating was compromised by including allegations made by disgruntled former Marvell in-house counsel Matthew Gloss in his whistleblower lawsuit filed before a Department of Labor ALJ.  *See id.* ¶¶ 68-72.  As plaintiffs concede, however, Marvell responded to these stated concerns by retaining a retired federal judge who, with the assistance of the outside counsel he selected, investigated Gloss's allegations fully to make sure any legitimate concerns were addressed.  *See id.* ¶¶ 70-71.

      *Finally*, plaintiffs cite to *Jasmine Networks, Inc. v. Marvell Semiconductor, Inc.* as purported evidence of "defendants' history of alleged theft of intellectual property."  *See* Compl. ¶¶ 74-77.  In that case, Jasmine Networks accused Marvell of misappropriating trade secrets it had shared with Marvell in the context of confidential acquisition discussions.  *See id.* ¶ 74.  Plaintiffs' apparent chief purpose in referencing *Jasmine Networks* is to recount lurid snippets of a voicemail accidentally left by Mr. Gloss for a Jasmine Networks attorney, *id.* ¶¶ 75-76, that recorded a conversation Mr. Gloss had with two other Marvell employees.  Of course, plaintiffs fail to mention that the California Court of Appeal concluded the recorded conversation described only a

"hypothetical situation." *See Jasmine Networks, Inc. v. Marvell Semiconductor, Inc.*, No. H036684, 2013 WL 3776188, at *3 (6th Dist. July 17, 2013) (unpublished). Worse, plaintiffs have now actually *deleted* from their current Complaint their prior acknowledgement that Marvell prevailed in the *Jasmine Networks* litigation. *Compare, e.g.*, Dkt. No. 1 ¶ 73 *with* Compl. ¶ 77. The failed *Jasmine Networks* lawsuit against Marvell obviously cannot show a "history" of theft or any other bad act, given that Marvell prevailed on all claims (and given that its victory was affirmed on appeal). *See Jasmine Networks*, 2013 WL 3776188 at *1, 9.

<u>Argument</u>

I.      NEITHER PLAINTIFFS' PURPORTED INJURIES NOR THE ALLEGED WRONGS SUPPORT A DIRECT CLAIM

Although plaintiffs purport to bring their claim for breach of fiduciary duty (Count I) both directly on behalf of themselves and a putative shareholder class, and derivatively on behalf of Marvell, Compl. ¶¶ 1, 171,[4] the law is clear that the claims plaintiffs assert are Marvell's claims and can be brought only derivatively, if at all.

Whether a shareholder claim is direct or derivative is governed by the law of the state of incorporation, *Lapidus v. Hecht,* 232 F.3d 679, 682 (9th Cir. 2000), in this case, Bermuda. Compl. ¶¶ 16, 153. Plaintiffs do not dispute that Bermuda law applies to their claims. *Id.* ¶¶ 51, 153.

Bermuda follows the English common law rule against "reflective loss," which prohibits shareholders from stating direct claims for losses that merely reflect the losses of the company. *See, e.g.*, Declaration of Alexander Potts, filed concurrently herewith ("Potts Decl.") ¶¶ 26-28; Declaration of Martin Moore QC, filed concurrently herewith ("Moore Decl.") ¶¶ 75-78.[5] Under the reflective loss rule

---

[4]   In pleading specific causes of action, plaintiffs appear to assert only their first cause of action for breach of fiduciary duty as a direct claim. *See* Compl. ¶¶ 175, 179, 185-86. Regardless, the arguments herein apply with equal force to plaintiffs' other causes of action.

[5]   Defendants have submitted declarations from two foreign law experts to set forth applicable Bermuda law: Mr. Potts, a barrister practicing in Bermuda, is offered as an expert on Bermuda law; Mr. Moore, a barrister and Queen's Counsel practicing in London, is offered as an expert on
(footnote continued)

1

> [a shareholder cannot] recover damages merely because the company in which he is interested has suffered damage. He cannot recover a sum equal to the diminution in the market value of his shares, or equal to the likely diminution in dividend, because such a "loss" is merely a reflection of the loss suffered by the company. The shareholder does not suffer any personal loss. His only "loss" is through the company, in the diminution in the value of the net assets of the company, in which he has (say) a 3 per cent. shareholding.

*Prudential Assurance Co Ltd v Newman Industries Ltd (No. 2)*, [1982] 1 Ch. 204, 222-23 (Defendants' Appendix of Foreign Authorities, filed concurrently herewith ("App'x") Ex. 64); *see also Johnson v Gore Wood & Co* [2002] 2 AC 1 (App'x Ex. 57); Potts Decl. ¶¶ 26-27; Moore Decl. ¶¶ 74-76.[6]

Plaintiffs' sole effort to plead a direct injury is their speculative allegation that the Individual Defendants' conduct "has damaged Marvell shareholders directly by jeopardizing and interfering with shareholders' rights to dividends." Compl. ¶ 2; *accord id.* ¶¶ 143(c), 154. Plaintiffs allege no reason future dividends are threatened other than Marvell's own potential financial losses if it is ultimately required to pay a judgment in the *CMU* litigation. The claimed injury is a classic example of reflective loss because any "likely diminution in dividend . . . is merely a reflection of the loss suffered by the company." *Prudential Assurance* [1982] 1 Ch. at 222-23 (App'x Ex. 64); Potts Decl. ¶¶ 29-30; Moore Decl. ¶¶ 79-83, 91.[7] Because plaintiffs'

---

English common law, which is applied in Bermuda in many relevant respects. *See, e.g.*, Moore Decl. ¶ 9; Potts Decl. ¶¶ 15, 19-21.

[6] A similar rule applies in U.S. jurisdictions. *See, e.g.*, *Kona Enters., Inc. v. Estate of Bishop*, 179 F.3d 767, 769 (9th Cir. 1999) ("The damages [plaintiff] seeks represent a diminution in value of the Companies, allegedly resulting from wrongful acts by Defendants. [Plaintiff] thus seeks recovery for wrongs to the Companies that resulted in a decline in the value of its stock. Plaintiff alleges no disproportionate injury sufficient to make out a direct claim.").

[7] Although failure to pay a declared dividend may give rise to a direct claim under Bermuda law (essentially by converting the shareholder into a creditor for the amount of the declared dividend), *see* Potts Decl. at 17 n.22; Moore Decl. ¶ 68, that principle is inapplicable here because plaintiffs have not pleaded, and cannot plead, that Marvell has actually failed to pay any declared dividend. *See supra* p. 6 & n.3; RJN Ex. J.

1   claimed injuries are entirely reflective of Marvell's alleged losses, plaintiffs cannot state a direct

2   claim and must therefore meet the requirements for a derivative action for this case to proceed.

3          In addition to being limited to derivative claims because of the reflective loss rule,

4   plaintiffs lack standing to pursue their asserted direct claim because the hypothetical interference

5   with future dividends they allege is too speculative to constitute injury-in-fact.  *See, e.g.*, *Friends*

6   *of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (Article III

7   standing requires plaintiff to show "it has suffered an 'injury in fact' that is (a) concrete and

8   particularized and (b) actual or imminent, not conjectural or hypothetical").  An injury that may

9   occur *if* Marvell ultimately has to pay a judgment after appeal and *if* that judgment materially

10  affects Marvell's ability to declare or pay discretionary dividends and *if* at some point Marvell

11  actually does not pay an expected dividend is too conjectural, remote, and indirect to confer

12  Article III standing.  *See, e.g.*, *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010)

13  ("[A] plaintiff may allege a future injury in order to comply with [the injury-in-fact] requirement,

14  but only if he or she 'is *immediately* in danger of sustaining some *direct* injury as the result of the

15  challenged . . . conduct and the injury or threat of injury is both real and immediate, not

16  conjectural or hypothetical.'") (citations omitted) (emphasis in original).

17         Finally, although plaintiffs' failure to plead any injury not reflective of the Company's

18  alleged losses is dispositive of any direct claim, plaintiffs' direct claim would also fail for the

19  additional reason that under English common law, and thus Bermuda law, directors owe their

20  duties to the companies they serve rather than to the companies' shareholders absent special

21  circumstances that plaintiffs cannot allege.  *See Peskin v. Anderson*, [2001] 1 B.C.L.C. 372 ¶¶ 29-

22  33 (App'x Ex. 63); *Feiner Family Trust v. VBI Corp.*, 07 CIV. 1914 (RPP), 2007 WL 2615448, at

23  *7 (S.D.N.Y. Sept. 11, 2007) ("[A] director does not owe any fiduciary duties to minority

24  shareholders solely based on his or her relationship to the company.") (quoting and applying

25  *Peskin* under Cayman Islands law); Potts Decl. ¶¶ 50-51; Moore Decl. ¶¶ 62-64.  Because the only

26  fiduciary duties at issue are owed solely to the Company, any claim for their alleged breach

27  belongs to the Company and can be pursued only derivatively.  *See, e.g.*, *Eshelman v. OrthoClear*

28

1   *Holdings, Inc.*, C 07-1429 JSW, 2008 WL 171059, *8, 9-10 (N.D. Cal. Jan. 18, 2008) (alleged

2   breach of fiduciary duties owed to company cannot support direct claims).

3          For all of these reasons, there is no direct claim, and plaintiffs' individual and putative

4   class claim should be dismissed without leave to amend.

5   II.    PLAINTIFFS' COMPLAINT DOES NOT MEET THE SETTLED REQUIREMENTS

6          FOR A SHAREHOLDER DERIVATIVE ACTION

7          Derivative claims are subject to established requirements that ensure individual

8   shareholders are not improperly substituting their personal litigation judgments for the considered

9   judgment of the corporation.  It is a "basic principle of corporate governance that the decisions of

10  a corporation—including the decision to initiate litigation—should be made by the board of

11  directors or the majority of shareholders," *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530

12  (1984), rather than individual shareholders (or their lawyers).  Because plaintiffs' claims do not

13  and cannot meet the settled requirements for a derivative lawsuit under Bermuda law (and

14  because, as set forth above, plaintiffs have no direct claim), the Complaint should be dismissed

15  without leave to amend.

16         A.     Plaintiffs Must Demonstrate That Their Claims Fall Within One of the Narrow

17                Exceptions to the "Rule in *Foss*" to Maintain a Derivative Claim Against the

18                Individual Defendants

19         Whether a shareholder may assert a claim derivatively on behalf of the corporation is

20  determined by the law of Bermuda, the country of Marvell's incorporation.  *See, e.g.*, *Batchelder*

21  *v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998); *Laborers' Local v. Intersil*, 868 F. Supp. 2d 838,

22  844 (N.D. Cal. 2012).[8]  Bermuda looks to the English common law, and specifically *Foss v*

_____

24         [8]     Under California choice-of-law rules, which this Court applies when sitting in diversity,
    *see, e.g.*, *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012), the place of
25  incorporation provides the law that governs the corporation's internal affairs, including legal
    relations between its shareholders and its officers and directors and limitations on a shareholder's
26  power to bring direct and derivative claims.  *See, e.g.*, Cal. Corp. Code § 2116.  This extends even
    to seemingly procedural conditions imposed on derivative suits.  *See, e.g.*, *Vaughn v. LJ Int'l, Inc.*,
27  174 Cal. App. 4th 213, 224-25 (2d Dist. 2009) (plaintiff's failure to comply with British Virgin
            (footnote continued)

*Harbottle* [1843] 2 Hare 461 (App'x Ex. 52) and its progeny, to determine when a shareholder

may bring a derivative action. *See* Potts Decl. ¶¶ 22-25, 31; Moore Decl. ¶ 25; *accord In re Tyco*

*Int'l, Ltd.*, 340 F. Supp. 2d 94, 96, 98 (D.N.H. 2004); Compl. ¶ 147. Under the so-called "rule in

*Foss*," the proper claimant where the company has suffered an alleged wrong is the company

itself, not the shareholder, unless one or more narrow exceptions apply. *See* Moore Decl. ¶¶ 25-

28; Potts Decl. ¶¶ 22, 25, 32; *accord Tyco*, 340 F. Supp. 2d at 98.

The rule in *Foss* has been cogently summarized as follows:

> (1) The proper plaintiff in an action in respect of a wrong alleged to
> be done to a corporation is, prima facie, the corporation.
>
> (2) Where the alleged wrong is a transaction which might be made
> binding on the corporation and on all its members by a simple
> majority of the members, no individual member of the corporation is
> allowed to maintain an action in respect of that matter because, if the
> majority confirms the transaction, *cadit quaestio* [the question is at
> an end]; or, if the majority challenges the transaction, there is no
> valid reason why the company should not sue.
>
> (3) There is no room for the operation of the rule if the alleged
> wrong is *ultra vires* the corporation, because the majority of
> members cannot confirm the transaction.
>
> (4) There is also no room for the operation of the rule if the
> transaction complained of could be validly done or sanctioned only
> by a special resolution or the like, because a simple majority cannot
> confirm a transaction which requires the concurrence of a greater
> majority.
>
> (5) There is an exception to the rule where what has been done
> amounts to fraud and the wrongdoers are themselves in control of
> the company. In this case the rule is relaxed in favour of the
> aggrieved minority, who are allowed to bring a minority
> shareholders' action on behalf of themselves and all others. The
> reason for this is that, if they were denied that right, their grievance
> could never reach the court because the wrongdoers themselves,
> being in control, would not allow the company to sue.

*Prudential Assurance* [1982] Ch. 204 at 210-11 (App'x Ex. 64) (citing *Edwards v. Halliwell*

[1950] 2 All E.R. 1064 (App'x Ex. 50)); *see also* Potts Decl. ¶ 24; Moore Decl. ¶¶ 26-27. The

rule in *Foss* was summarized by one U.S. court as allowing a shareholder to assert the company's

Islands ("BVI") statute requiring leave of BVI High Court to file derivative litigation barred
derivative claims).

1    claims only if the conduct at issue is (1) *ultra vires*; (2) requires a special majority to ratify;

2    (3) infringes a shareholder's personal rights; or (4) qualifies as a "fraud on the minority."  *Tyco*,

3    340 F. Supp. 2d at 98.

4           Upon a defendant's challenge to the sufficiency of a complaint, English common law

5    (followed by Bermuda) requires the plaintiff to make a *prima facie* showing of an applicable

6    exception to the rule in *Foss*; the plaintiff cannot merely rely on the allegations of his complaint.

7    *See Prudential Assurance* [1982] Ch. 204 at 221-22; Potts Decl. at 30 n.32; Moore Decl. ¶ 30; *see*

8    *also City of Harper Woods Employees' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009)

9    ("[P]laintiffs bear the burden of establishing standing to bring a derivative suit under English law,

10   which applies to this case. . . . [A] plaintiff, before proceeding with a derivative suit, must

11   'establish a prima facie case . . . that the action falls within the proper boundaries of the exception

12   to the rule in *Foss v. Harbottle*[.]'") (internal citations omitted).  This requirement is consistent

13   with the standard applicable to challenges to a plaintiff's standing to bring a derivative suit

14   pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, under which "there is no

15   presumption of the truthfulness of the Plaintiff's allegations" if their truth is challenged.  *See, e.g.*,

16   *Sarandi v. Breu*, C 08-2118 SBA, 2009 WL 2871049, at *3 (N.D. Cal. Sept. 2, 2009) (quotation

17   marks and citations omitted).

18          Plaintiffs maintain they can pursue their claims under the rule in *Foss* because the

19   Individual Defendants' conduct was *ultra vires* or a "fraud on the minority," and because it

20   infringes their personal rights as shareholders.  Compl. ¶¶ 154, 156, 166.  Plaintiffs have failed to

21   allege, and certainly cannot make the required *prima facie* showing, that any of these 'exceptions'

22   to the rule in *Foss* applies.

23          B.    Plaintiffs Have Not Alleged *Ultra Vires* Conduct

24          The *ultra vires* exception to the rule in *Foss* applies to conduct that is beyond a company's

25   legal capacity as set forth in the company's memorandum of association and that cannot be ratified

26   by the company's shareholders.    Potts Decl. ¶¶ 37-39; Moore Decl. ¶¶ 31-38.    Marvell's

27   Memorandum of Association broadly provides that Marvell may engage in, among other things,

28   "packaging of goods of all kinds," "buying, selling and dealing in goods of all kinds," and

"designing and manufacturing of goods of all kinds."  *See* Declaration of Carol Feathers, filed concurrently herewith ("Feathers Decl.") Ex. A at 8.  These expansive purposes extend to the design, manufacture and sale of even allegedly infringing goods and thus patent infringement and executive compensation cannot be viewed as *ultra vires* conduct.  *Cf. City of Harper Woods*, 589 F.3d at 1303 (bribes were not *ultra vires* conduct where company was authorized to make payments to bribe recipient); Moore Decl. ¶¶ 39-43; Potts Decl. ¶ 47.1[9]

C.     Plaintiffs Have Not Alleged the Control or Self-Dealing Required to Bring This Case Within the Fraud on the Minority Exception

To establish the fraud on the minority exception to the rule in *Foss*, plaintiffs must show (i) the alleged wrongdoers have control over a majority of the voting rights; and (ii) there has been a fraud on the minority.  Potts Decl. ¶¶ 40-45; *accord Tyco*, 340 F. Supp. 2d at 98, 102.  Plaintiffs cannot establish these requirements.

*First*, plaintiffs have not alleged, and cannot ever allege, that the Individual Defendants control a majority of the voting rights.  This is critical under Bermuda law; if the wrongdoers control only a minority of the voting rights, the majority can force the corporation to take action against the wrongdoers and there is no justification for allowing an individual shareholder (or, as here, four individual shareholders who collectively hold less than 0.005% of the Company's outstanding shares) to take on that role.  *See* Potts Decl. ¶¶ 44-45; Moore Decl. ¶¶ 32-33, 45-48; Compl. ¶¶ 13-15, 142.  By plaintiffs' own admission, the Individual Defendants who co-founded Marvell—the Sutardjas and Ms. Dai—among them control only approximately 20% of Marvell's outstanding shares.  Compl. ¶ 20; *accord* RJN Ex. A at 32.  The remaining Individual Defendants

---

[9]     Even if plaintiffs *could* allege that Marvell engaged in any *ultra vires* conduct, their derivative claims would fail under Bermudian law for an additional reason: Where (as here) plaintiffs seek to redress past *ultra vires* conduct rather than enjoin threatened *ultra vires* conduct, they must bring their derivative claims within the fraud on the minority exception to the rule in *Foss* which, as explained below, plaintiffs cannot do.  *See Clark v Energia Global Ltd* [2002] Bda LR 39 at 10-11 ("[W]here the ultra vires act complained of had already been committed . . . the shareholder must demonstrate that the claim satisfied the fraud on the minority/wrongdoer control exceptions before the action c[an] continue."); Potts Decl. ¶¶ 37-39, 47.2.

collectively own and control less than 0.02% of the outstanding shares. *See* RJN Ex. A at Cover Page (503.4 million total shares outstanding), Ex. B at 1 (Gromer: 24,333 shares), Ex. C at 1 (Kassakian: 26,519 shares), Ex. D at 1 (Krueger: 24,519 shares) & Ex. E at 1 (Thakur: 19,573 shares). Thus, nearly 80% of Marvell's stock is held by shareholders who retain an unbiased ability to determine whether Marvell should pursue claims against the Individual Defendants. That alone precludes plaintiffs from invoking the *ultra vires* exception to *Foss*. *See* Potts Decl. ¶ 48.2; Moore Decl. ¶¶ 51-56; *see also Erie Cnty. Emps. Ret. Sys. v. Isenberg*, CIV. A. H-11-4052, 2012 WL 3100463, at *6 (S.D. Tex. July 30, 2012) (plaintiff failed to allege control where defendants collectively owned and controlled "fewer than 14% of the voting shares—nowhere near a majority").[10]

*Second*, plaintiffs have failed to allege that any Individual Defendant engaged in "fraud" as that term is understood with respect to the rule in *Foss*. Plaintiffs attempt to allege that the Individual Defendants engaged in fraud on the minority by: "(a) willfully causing Marvell to infringe upon CMU's patents; (b) misrepresenting the use of CMU's patents and the status of Marvell's intellectual property and patents; (c) engaging in self-dealing by receiving performance-based compensation based on Marvell's inflated revenues and profits resulting from the Individual Defendants' misconduct; and (d) breaching their fiduciary duties owed to Marvell and its shareholders." Compl. ¶ 166. None of these suffices.

Causing patent infringement, making allegedly false statements in Marvell's public filings, or breaching unspecified fiduciary duties in unspecified ways does not constitute a "fraud" as the term is used in the rule in *Foss*. English courts have widely recognized that "fraud" in this context

---

[10]    Although the patent verdict and other allegations upon which plaintiffs premise their Complaint are matters of public record, the shareholders have not convened any special general meetings to second-guess the Board's business judgment, even though they could do so with the support of only 10% of the shares outstanding. *See* Feathers Decl. Ex. B ¶ 36. Plaintiffs have not alleged any unsuccessful efforts they undertook to persuade the Company to sue prior to filing this lawsuit, as required whenever demand would not be obviously futile, *see* Potts Decl. ¶ 43; *accord* Fed. R. Civ. P. 23.1(b)(3) (requiring plaintiffs to "state with particularity" their prior efforts or reasons for not making any), and Defendants are aware of none.

"is not present unless the alleged wrongdoer has benefited at the company's expense as a result of his misconduct." *Tyco*, 340 F. Supp. 2d at 99 ("English law, unlike its American counterpart, does not permit a derivative action to be maintained to remedy a breach of fiduciary duty that does not involve self-dealing by those in control."); *accord* Potts Decl. ¶¶ 41-42; Moore Decl. ¶¶ 44.

Plaintiffs' sole allegations of fraud on the minority that *resemble* self-dealing—"receiving performance-based compensation based on Marvell's inflated revenues and profits," *e.g.*, Compl. ¶ 166(c)—is insufficient.  The mere allegation that the Company's revenues on which incentive compensation was based were achieved in part from sale of allegedly infringing products does not transform incentive compensation or receipt of stock options into self-dealing.  *See, e.g.*, *Tyco*, 340 F. Supp. 2d at 100 ("It is difficult to see how the receipt of stock options can constitute improper self-dealing, at least in a case such as this where the plaintiff does not allege either that the options were unearned or that the directors stood to gain in some special way from increases in the company's stock price at the expense of other shareholders."); *see also Winn v. Schafer*, 499 F. Supp. 2d 390, 398 (S.D.N.Y. 2007) (applying English law) (allegations that "the Individual Defendants 'receive substantial salaries, bonus payments, benefits, and other emoluments by virtue of their membership on the Board' . . . [and] have thus benefitted from the wrongs . . . alleged" "are precisely the type of allegations that were found to be insufficient in *Tyco* and which are consistently found to be insufficient to prove director self-interest in the analogous context of derivative actions applying American law"); Potts Decl. ¶ 48.1; Moore Decl. ¶ 50. Notwithstanding the conclusory allegation that Marvell's revenues were "inflated" by the alleged patent infringement, plaintiffs do not allege that the revenues were improperly recognized or that Marvell did not actually achieve the revenues that triggered the incentive compensation.  The Individual Defendants made money because the Company and all of its shareholders made money; that is not fraud on the minority.

Because plaintiffs have failed to allege the requisite control that would prevent a majority of shareholders from either ratifying or pursuing claims for any alleged illegal conduct by the Individual Defendants or any self-dealing, the "fraud on the minority" exception to the rule in *Foss* does not apply.  *Accord City of Harper Woods*, 589 F.3d at 1301 (suit alleging directors

1    caused company to engage in illegal bribery did not fall within *ultra vires* exception to rule in

2    *Foss* because "[e]ven if Harper Woods' complaint can be construed as an action against the

3    directors for committing illegal acts, Harper Woods has not convincingly demonstrated that

4    English law finds illegal acts incapable of ratification by shareholders"); Potts Decl. ¶¶ 48-49;

5    Moore Decl. ¶¶ 51-56.  Plaintiffs cannot pursue derivative claims on behalf of Marvell.

6           D.    Plaintiffs Have Not Alleged That Defendants Infringed upon Plaintiffs' Personal

7                 Rights

8           Finally, plaintiffs contend that their claims fall within an exception to the rule in *Foss*

9    because the Individual Defendants' conduct "has infringed upon the shareholders' personal rights

10   because it has jeopardized the shareholders' expectations and right to dividends."  Compl.  ¶ 154.

11   This "exception" to the rule in *Foss*, however, does not permit the shareholder to sue derivatively;

12   it is simply another way of saying that a shareholder may pursue direct claims against the

13   company's directors or officers if the shareholder has an injury that is not a "reflective loss"

14   derivative of loss allegedly suffered by the company (*see supra* Section I).  *See, e.g.*, Potts Decl.

15   ¶ 36; Moore Decl. ¶ 66; *Tyco*, 340 F. Supp. 2d at 98 ("[A] shareholder's suit to protect her

16   personal rights is not brought as a derivative action[.]").  Because there is no non-reflective loss,

17   plaintiffs' allegation cannot support a direct or a derivative claim.

18          Further, because shareholders have no legal right to as-yet-undeclared dividends, *see, e.g.*,

19   Feathers Decl. Ex. B ¶ 66 (Board of Directors "*may* . . . declare a dividend to be paid to the

20   Members") (emphasis added); Potts Decl. at 17-18 n.22; Moore Decl. ¶ 68, the allegation of

21   frustrated dividend expectations does not assert a cognizable injury.  *Accord* 11 Fletcher Cyc.

22   Corp. § 5321 (Supp. 2014) (stating the general rule that "shareholders have no legal right to share

23   in the corporation's profits unless the directors declare a dividend.  In other words, profits belong

24   to the corporation and not its shareholders until the declaration of a dividend.").  And, as noted, all

25   declared dividends have been paid.  *See* RJN Ex. J.

26          The reference to the personal-rights "exception" to the rule in *Foss* does nothing to revive

27   plaintiffs' claims.

28

III.     PLAINTIFFS HAVE FAILED TO PLEAD ANY CONDUCT BY DEFENDANTS THAT
         COULD BE A BASIS FOR LIABILITY UNDER MARVELL'S CHARTER

As a third and independent reason for dismissing the Complaint, plaintiffs have not alleged any conduct by any Individual Defendant that would be actionable under Marvell's charter.  Like many other jurisdictions, Bermuda permits corporations to include in their charters provisions that exculpate directors and officers for conduct that does not rise to a certain degree of culpability.  Such provisions serve the salutary purpose of freeing directors and officers to pursue value-maximizing business strategies without the risk that they will be held liable in hindsight should the strategies fail.  *Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 777 (Del. Ch. 2004) (discussing exculpatory provision under Delaware law and noting that "[o]ne of the primary purposes of § 102(b)(7) is to encourage directors to undertake risky, but potentially value-maximizing, business strategies, so long as they do so in good faith").

As permitted by Bermuda law, *see* Potts Decl. ¶ 53; Bermuda Companies Act 1981 § 98 (App'x Ex. 13), Marvell's Bye-Laws indemnify and hold harmless Marvell's directors and officers, including each of the Individual Defendants, for any conduct that does not rise to the level of "fraud or dishonesty."   Feathers Decl. Ex. B ¶ 30.   And, dispositive here, Marvell shareholders (including plaintiffs) waive any claim, whether direct or derivative, against Marvell's officers and directors based on conduct that does not constitute "fraud or dishonesty" (and does not concern matters arising under the United States federal securities laws, which plaintiffs have not invoked):

> Each Member [shareholder] agrees to waive any claim or right of action such Member might have, whether individually or by or in the right of the Company, against any Director or Officer on account of any action taken by such Director or Officer, or the failure of such Director or Officer to take any action in the performance of his duties with or for the Company, PROVIDED THAT such waiver shall not extend to any matter in respect of any fraud or dishonesty which may attach to such Director or Officer or to any matter arising under United States federal securities laws.

*Id.* at ¶ 31.  Recent legislative revisions to the Companies Act confirm that "fraud and dishonesty" requires deliberately fraudulent or dishonest conduct; negligence and even willful negligence are insufficient.  Potts Decl. ¶¶ 54-55.

Although they spend most of their 70-page Complaint attempting to do so, plaintiffs cannot convert *Marvell's* alleged patent infringement into "fraud or dishonesty" by the Individual Defendants.  Even willful patent infringement is not "fraud or dishonesty."  *See Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 490-91 (S.D.N.Y. 2000) (plaintiff had not established scheme to defraud under RICO because his "accusations [were] nothing more than claims of knowing and deliberate patent infringement" and "[t]o establish a scheme to defraud, an element of deception must be present").  And even if infringement did constitute "fraud or dishonesty" by Marvell, the only allegations plaintiffs make about the Individual Defendants' purported role in the alleged infringement is that they should have done more to root out and prevent the infringement of CMU's patents.  *See, e.g.*, Compl. ¶ 100 (outside directors "failed to take appropriate action" to stop infringement); *id.* ¶ 102 (similar); *id.* ¶ 174 (outside directors ignored "problems with Marvell's internal controls and procedures [regarding intellectual property] and failed to make a good faith effort to correct the problems or prevent their recurrence"); *id.* ¶¶ 86-92 (defendants Sehat and Pantas Sutardja "failed to cause Marvell's employees to take any significant action to investigate whether Marvell and others were infringing CMU's patents").

These allegations—the truth of which defendants vigorously dispute—describe at most a breach of the duty of care and thus cannot be a basis for liability under Marvell's Bye-Laws.  *See, e.g.*, Potts Decl. ¶¶ 54-55; *see also Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1014 (S.D. Cal. 2000) (noting that "no degree of negligence can satisfy the substantive element of scienter"), *aff'd*, 288 F.3d 385 (9th Cir. 2002).  The same holds true for the alleged failure to settle the *CMU* litigation, Compl. ¶ 170, and alleged "failure to maintain adequate internal controls," *id.* ¶ 173.  *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007) (applying PSLRA) ("[W]ithout additional facts, a lack of internal controls generally does not suffice to show scienter.") (internal quotations and citation omitted); *In re Watchguard Sec. Litig.*, No. C05-678LR, 2006 WL 2927663, at *10 (W.D. Wash. Oct. 12, 2006) (applying PSLRA) ("That the controls were inadequate is perhaps an indication of incompetence, but incompetence, even gross incompetence, is no basis for a securities fraud claim.").

1    Nor do plaintiffs' allegations that the Individual Defendants breached their fiduciary duties

2    by "approving or receiving compensation which was unjust and unearned because the

3    compensation was based on revenues, earnings and profits which were inflated due to Marvell's

4    willful infringement of CMU's patents," Compl. ¶ 170, amount to fraud or dishonesty.  An officer

5    does not commit "fraud" by accepting incentive compensation for achieving revenue targets

6    merely because some of the revenue was derived from sales that ultimately could give rise to an

7    adverse litigation judgment.  Plaintiffs do not allege that Marvell did not actually achieve the

8    revenues that triggered the lawful and fully disclosed incentive compensation paid to the Sutardjas

9    and Ms. Dai.  And there are certainly no plausible allegations that any of these three Individual

10   Defendants received incentive compensation that was based on revenues that they believed were

11   not properly recognized (because no such allegation could be made).

12   In seeking to tie incentive compensation to knowledge of infringement, plaintiffs allege

13   only the following: CMU sent a letter to defendant Pantas Sutardja in 2003—*six years* before

14   CMU sued Marvell—inquiring about Marvell's interest in licensing CMU's patents, and that

15   defendant Sehat Sutardja was also aware of that letter.  *See* Compl. ¶¶ 82, 86.  Obviously,

16   knowledge of CMU's patents does not equate to knowledge that Marvell was infringing them

17   (and, of course, Marvell contends it was not doing so and is vigorously pressing its substantial

18   non-infringement and invalidity arguments on appeal).  On the critical issue of knowledge of

19   infringement, plaintiffs allege only that the Sutardjas failed to cause Marvell's employees to

20   investigate whether Marvell was infringing CMU's patents.  *See id.* at ¶¶ 88-89.  An alleged

21   failure to investigate, however, does not amount to actual knowledge that would support "fraud or

22   dishonesty" in relation to incentive compensation or otherwise.  Plaintiffs' allegation that "the

23   Sutardja brothers encouraged Marvell employees to continue working on Marvell products that

24   infringed CMU's patents" fares no better.  That has nothing to do with whether the Sutardjas

25   actually believed Marvell's products infringed any CMU patents (a fact they vehemently have

26   denied throughout the *CMU* litigation and continue to deny) and, in any event, plaintiffs' only

27   support for this statement is the *CMU* trial court's discussion of the alleged actions of lower-level

28   Marvell engineers.  *See* Compl. ¶ 89.

1    For the same reason, plaintiffs' assertion that the Individual Defendants breached their

2    fiduciary duties by "disseminating to Marvell shareholders materially misleading and inaccurate

3    information," Compl. ¶ 170, which plaintiffs contend was false because it did not disclose patent

4    infringement, does not state a claim.  Absent some meaningful allegation that the Individual

5    Defendants *knew* that Marvell's products infringed valid CMU patents and withheld such

6    information with intent to deceive, an alleged omission of patent-infringement confessions is not

7    fraud.  The *risk* of patent infringement and associated liability was amply disclosed in Marvell's—

8    like virtually every other publicly traded technology company's—public filings, and Marvell has

9    repeatedly made extensive disclosures regarding the CMU litigation and its potential

10   consequences since the case was filed in 2009.  *See, e.g.*, RJN Ex. A at 18-20, 31, 38, 46, 52-53,

11   55-56, 90-91, 94, Ex. K at 101, Ex. L at 93-94, Ex. M at 92 & Ex. N at 19-20, 45, 48, 87-88; *In re*

12   *Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1409 (9th Cir. 1996) (no actionable fraud by omission in

13   prospectus where prospectus "adequately disclosed the information [the plaintiff] allege[d] [the

14   defendant] to have concealed").[11]

15   Because plaintiffs have failed to allege any conduct that can qualify as "fraud or

16   dishonesty," their claims are barred by the exculpatory provision of Marvell's Bye-Laws and are

17   appropriately dismissed at the pleading stage.  *See, e.g.*, *In re Sagent Tech., Inc., Derivative Litig.*,

18   278 F. Supp. 2d 1079, 1095 n.9 (N.D. Cal. 2003); *In re Hecla Min. Co. Derivative S'holder Litig.*,

19   2:12-CV-00097-REB, 2014 WL 689036, at *9 n.8 (D. Idaho Feb. 20, 2014).

20   _____

21   [11]   Further, because not all of the Individual Defendants signed each SEC filing, they cannot

22   be liable for omissions in documents that they did not sign absent allegations (not present here)
     that they substantially participated in the creation of the documents.  *See In re Cylink Sec. Litig.*,

23   178 F. Supp. 2d 1077, 1085 (N.D. Cal. 2001) ("Butler did not sign the financial statements at
     issue.  Plaintiffs, therefore, must allege that Butler substantially participated or was intricately

24   involved in preparing the statements.").  The referenced SEC filings were not signed by the
     following Individual Defendants: 2007 10-K: Gromer, Kassakian, Thakur, Dai; 2008 10-K:

25   Kassakian, Thakur, Dai; 2009 10-K: Thakur, Dai; 2010 10-K: Thakur, Dai; 2011 10-K: Thakur,
     Dai; 2012 10-K: Thakur, Dai; 2013 10-K: Dai; 2014 10-K: Pantas Sutardja, Dai; 2010 Form 14A

26   Proxy Statement: Thakur, Dai.  *See* Compl. ¶¶ 108, 114-16, 120, 123-25, 127-28; RJN Ex. A at

27   110; Ex. K at 115, Ex. L at 107, Ex. M at 107, Ex. N at 109, Ex. O at 186, Ex. P at 142, Ex. Q
     at 129 & Ex. R at 62.

28

IV.   <u>PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO PLEAD</u>
      <u>"FRAUD OR DISHONESTY" WITH PARTICULARITY</u>

The defects set forth in Sections I through III above cannot be cured by amendment, and plaintiffs' Complaint should be dismissed with prejudice for those reasons.  *See, e.g.*, *Erie Cnty.*, 2012 WL 3100463, *9 (denying leave to replead where plaintiff's "Complaint is a well crafted and detailed pleading of 38 pages" and foreign law derivative standing issues "have been most thoroughly and exhaustively submitted").  Plaintiffs' Complaint also must be dismissed, however, because it does not plead "fraud or dishonesty" with the requisite particularity.

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Even where fraud is not a necessary element of the claim, if the claim is "grounded in fraud" or "sounds in fraud," then "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

Plaintiffs' claims for breach of fiduciary duty, unjust enrichment, and breach of the duty of honest services all sound in fraud because they can only be viable to the extent they allege "fraud or dishonesty" to fall outside the exculpatory provision in Marvell's Bye-Laws.  *See supra* Section III.  For this reason, the Complaint must comport with Rule 9(b)'s pleading requirements.  *See In re AlphaStar Ins. Grp. Ltd.*, 383 B.R. 231, 270-71 (Bankr. S.D.N.Y. 2008) (claim for breach of fiduciary duty had to satisfy Rule 9(b) where Bermuda company's "bye-laws provide[d] a complete defense to any claims for breach of fiduciary duty that are not based on fraud or dishonesty"); *In re Ditech Networks, Inc. Derivative Litig.*, C 06-5157 JF, 2008 WL 820705, at *6 (N.D. Cal. Mar. 26, 2008) (breach of fiduciary duty claim sounding in fraud had to comply with Rule 9(b)); *In re Actimmune Mktg. Litig.*, C 08-02376 MHP, 2009 WL 3740648, at *16 (N.D. Cal. Nov. 6, 2009) (unjust enrichment claim was subject to Rule 9(b) where its "only basis" sounded in fraud), *aff'd*, 464 F. App'x 651 (9th Cir. 2011).

"To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d

1047, 1055 (9th Cir. 2011) (internal quotations and citation omitted) (alteration in original). Although scienter may be alleged generally under Rule 9(b), allegations of scienter must still be plausible and non-conclusory.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009).

As noted, to imbue claims about willful patent infringement with hints of fraud, plaintiffs allege that the Individual Defendants "disseminat[ed] to Marvell shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings, press releases, and other public statements and disclosures as detailed herein," *see* Compl. ¶ 170, but these allegations are not sufficient to meet Rule 9(b)'s requirements.[12]  Although plaintiffs contend these statements are misleading because they failed to disclose Marvell's alleged infringement of CMU's patents and implied that Marvell either had patents covering its technology or had paid for licenses, *see id.* ¶¶ 107-25, 128, nowhere do plaintiffs plausibly allege that any Individual Defendant had actual knowledge of any patent infringement.  Most of plaintiffs' allegations of knowledge refer only to what "Marvell"—rather than any Individual Defendant—knew.  This is plainly insufficient.  *See, e.g., Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (internal quotations and citation omitted).

---

[12]  Although plaintiffs have included general references to "press releases[] and other public statements and disclosures," Compl. ¶ 170, the only specific statements alleged to contain misleading and inaccurate information are Marvell's 2007 through 2014 annual reports on Form 10-K and its 2010 proxy statement on Form 14A.  *See id.* ¶¶ 107-25, 128.  Although the Complaint mentions one press release related to Marvell's stock repurchases, it does not allege that there was anything false or misleading about it.  *See id.* ¶ 136.

<u>Conclusion</u>

For all of the foregoing reasons, plaintiffs' Complaint should be dismissed without leave to amend.

DATED: September 4, 2014        QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _/s/ Harry A. Olivar, Jr._____
    Harry A. Olivar, Jr.
    *Attorneys for Defendants*

**ATTESTATION**

I, Valerie Roddy, am the ECF User whose ID and password are being used to file this Notice of Motion and Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 9(b).  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Harry A. Olivar, Jr. has concurred in this filing.


DATED:  September 4, 2014          */s/ Valerie Roddy*
                                   Valerie Roddy