1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Harry A. Olivar, Jr. (SBN 143089)
2    harryolivar@quinnemanuel.com
     Valerie Roddy (SBN 235163)
3    valerieroddy@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
   Telephone:     (213) 443-3000
5  Facsimile:     (213) 443-3100

6  *Attorneys for Defendants*

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13  LEE VOSS, SEBASTIANO D'ARRIGO,          Lead Case No. 14-cv-1581 LHK (HRL)
    JAMES DIBIASE, and MARIE DIBIASE, on    (Consolidated with Case Nos. 14-cv-2523
14  behalf of themselves and all others similarly  LHK (HRL) and 14-cv-3214 LHK (HRL))
    situated and derivatively on behalf of
15  MARVELL TECHNOLOGY GROUP, LTD.,         **REPLY MEMORANDUM IN SUPPORT
                                            OF DEFENDANTS' MOTION TO
16             Plaintiffs,                  DISMISS PLAINTIFFS' COMPLAINT
                                            PURSUANT TO FED. R. CIV. P. 12(B)(1),
17        v.                                12(B)(6), AND 9(B)**

18  SEHAT SUTARDJA, JUERGEN GROMER,
    JOHN G. KASSAKIAN, ARTURO
19  KRUEGER, RANDHIR THAKUR, PANTAS
    SUTARDJA, WEILI DAI, and DOES 1-20,
20                                          Hearing Date:    January 22, 2015
               Defendants,                 Hearing Time:    1:30 p.m.
21                                          Courtroom:       8
           – and –
22
    MARVELL TECHNOLOGY GROUP, LTD.,
23
               Nominal Defendant.
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.     BERMUDA LAW APPLIES AND, AS PLAINTIFFS CONCEDE, BARS THIS ACTION ..................................................................................................................... 2

II.    PLAINTIFFS LACK DERIVATIVE STANDING EVEN UNDER INAPPLICABLE CALIFORNIA LAW ................................................................... 9

     A.    None of Marvell's Directors—Much Less a Majority—Faces a Substantial Likelihood of Liability ..................................................................... 9

     B.    Plaintiffs' Unsupported Allegations That Dr. Sutardja Controls the Board or Has Engaged in "Self-Dealing" Do Not Establish Demand Futility ...................... 13

III.   PLAINTIFFS HAVE NOT ALLEGED A DIRECT INJURY UNDER ANY LAW ........ 14

IV.   PLAINTIFFS' CLAIMS SHOULD ALSO BE DISMISSED UNDER RULE 12(B)(6) ................................................................................................................... 16

V.    THIS ACTION SHOULD BE DISMISSED WITH PREJUDICE, NOT STAYED ......... 17

CONCLUSION ................................................................................................................... 20

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4

*In re Adobe Sys., Inc. Privacy Litig.,*
   No. 13-CV-05226-LHK, 2014 WL 4379916 (N.D. Cal. Sept. 4, 2014) ..................................16

5

*Attwood v. Mendocino Coast Dist. Hosp.,*
6   886 F.2d 241 (9th Cir. 1989) ........................................................................................................17

7

*In re BP p.l.c. Deriv. Litig.,*
   No. 3AN-06-11929CI, 2007 WL 4913136 (Alaska Super. Ct. May 17, 2007) ....................6, 7

8

*In re BP p.l.c. Deriv. Litig.,*
9   507 F. Supp. 2d 302 (S.D.N.Y. 2007) ............................................................................................7

10   *Barclays Discount Bank Ltd. v. Levy,*
   743 F.2d 722 (9th Cir. 1984) ..........................................................................................................3

11

*In re Biopure Corp. Deriv. Litig.,*
12   424 F. Supp. 2d 305 (D. Mass. 2006) ..........................................................................................11

13   *Charter Twp. of Clinton Police & Fire Ret. Sys. v. Martin,*
   219 Cal. App. 4th 924 (2013) ......................................................................................................18

14

*City of Harper Woods Employees' Ret. Sys. v. Olver,*
15   589 F.3d 1292 (D.C. Cir. 2009) .............................................................................................8, 17

16   *Clapper v. Amnesty Int'l USA,*
   133 S. Ct. 1138 (2013) ..................................................................................................................15

17

*Copley Press, Inc. v. Superior Court,*
18   39 Cal. 4th 1272 (2006) ..................................................................................................................3

19   *Diamond Multimedia Sys., Inc. v. Superior Court,*
   19 Cal. 4th 1036 (1999) ..................................................................................................................7

20

*In re E.F. Hutton Banking Practices Litig.,*
21   634 F. Supp. 265 (S.D.N.Y. 1986) ..............................................................................................13

22   *Edgar v. MITE Corp.,*
   457 U.S. 624 (1982) ........................................................................................................................3

23

*Erie Cnty. Emps. Ret. Sys. v. Isenberg,*
24   No. CIV. A. H-11-4052, 2012 WL 3100463 (S.D. Tex. July 30, 2012) ..................................17

25   *Good v. Nippon Yusen Kaisha,*
   No. 12-cv-1882-AWI-MJS, 2013 WL 2664193 (E.D. Cal. June 12, 2013) ...........................7

26

*Greenspun v. Bogan,*
   492 F.2d 375 (1st Cir. 1974) ........................................................................................................19

27

28

*Grosset v. Wenaas*,
   42 Cal. 4th 1100 (2008)..................................................................................................................4

*Haddock v. Bd. of Dental Exam'rs*,
   777 F.2d 462 (9th Cir. 1985).........................................................................................................3

*Havlicek v. Coast-to-Coast Analytical Servs., Inc.*,
   39 Cal. App. 4th 1844 (1995).......................................................................................................7

*Jones v. H.F. Ahmanson & Co.*,
   1 Cal. 3d 93 (1969)..............................................................................................................14, 15

*Jorgensen v. United States*,
   No. C 03-00188 MJJ, 2004 WL 3267262 (N.D. Cal. Feb. 17, 2004) .........................................17

*Kahn v. Kolberg Kravis Roberts & Co.*,
   23 A.3d 831 (Del. 2011)..............................................................................................................10

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991).........................................................................................................................8

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001)..........................................................................................................16

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010)....................................................................................................................3

*McDonald v. Household Int'l, Inc.*,
   425 F.3d 424 (7th Cir. 2005).........................................................................................................3

*In re Merrill Lynch & Co., Inc., Sec. Deriv. & ERISA Litig.*,
   597 F. Supp. 2d 427 (S.D.N.Y. 2009)........................................................................................18

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal. 4th 459 (1992).....................................................................................................................8

*Nelson v. Anderson*,
   72 Cal. App. 4th 111 (1999)........................................................................................................14

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
   320 F.3d 920, 926 (9th Cir. 2003)..............................................................................................11

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   609 F. Supp. 2d 938 (N.D. Cal. 2009), *rev'd and remanded*,
   615 F.3d 1106 (9th Cir. 2010)......................................................................................................5

*Oakland Raiders v. Nat'l Football League*,
   93 Cal. App. 4th 572 (2001).........................................................................................................9

*Oncology Therapeutics Network Connection v. Virginia Hematology*
   *Oncology PLLC*,
   No. C 05-3033 WDB, 2006 WL 334532 (N.D. Cal. Feb. 10, 2006) ......................................4, 5

*In re Oracle Sec. Litig.*,
   829 F. Supp. 1176 (N.D. Cal. 1993) ..........................................................................................19

*In re Par Pharm., Inc. Deriv. Litig.*,
    750 F. Supp. 641 (S.D.N.Y. 1990) ...............................................................................19

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008) ....................................................................................7

*Pfeiffer v. Toll*,
    989 A.2d 683 (Del. Ch. 2010) ..................................................................................10, 11

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ................................................................................................9

*In re Refco Inc. Sec. Litig.*,
    892 F. Supp. 2d 534 (S.D.N.Y. 2012) .............................................................................7

*Respler v. Evans*,
    No. CV 13-1097-SLR, 2014 WL 631668 (D. Del. Feb. 18, 2014) ...............................20

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ...........................................................................................9

*In re Sapient Corp. Deriv. Litig.*,
    555 F. Supp. 2d 259 (D. Mass. 2008) ...........................................................................18

*Sharp v. Big Jim Mines*,
    39 Cal. App. 2d 435 (1940) .............................................................................................6

*Shields v. Singleton*,
    15 Cal. App. 4th 1611 (1993) ..........................................................................................5

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ...........................................................................................9

*Sprouse v. Comm'r of Internal Revenue*,
    122 F.2d 973 (9th Cir. 1941) .........................................................................................14

*State Farm Mut. Auto. Ins. Co. v. Superior Court*,
    114 Cal. App. 4th 434 (2003) ......................................................................................3, 4

*Strong ex rel. Tidewater, Inc. v. Taylor*,
    No. CIV. A. 11-392, 2013 WL 818893 (E.D. La. Mar. 5, 2013) ..................................18

*TVI Corp. v. Gallagher*,
    No. CV 7798-VCP, 2013 WL 5809271 (Del. Ch. Oct. 28, 2013) .................................13

*In re Trump Hotels S'holder Deriv. Litig.*,
    No. 96 CIV. 7820 DAB, 2000 WL 1371317 (S.D.N.Y. Sept. 21, 2000) .......................13

*In re Tyco Int'l, Ltd.*,
    340 F. Supp. 2d 94 (D.N.H. 2004) .................................................................................17

*Vaughn v. LJ Int'l, Inc.*,
    174 Cal. App. 4th 213 (2009) ................................................................................. *passim*

*In re Verifone Holdings, Inc. S'holder Deriv. Litig.*,
  No. C 07-06347 MHP, 2009 WL 1458233 (N.D. Cal. May 26, 2009) .................................16

*Von Hoffburg v. Alexander*,
  615 F.2d 633 (5th Cir. 1980) ............................................................................................17

*Wehlage v. EmpRes Healthcare Inc.*,
  821 F. Supp. 2d 1122 (N.D. Cal. 2011) ..............................................................................3

*Western Airlines, Inc. v. Sobieski*,
  191 Cal. App. 2d 399 (1961) ..........................................................................................5, 6

*Wilson v. Louisiana-Pac. Res., Inc.*,
  138 Cal. App. 3d 216 (1982) ..............................................................................................5

*Winn v. Schafer*,
  499 F. Supp. 2d 390 (S.D.N.Y. 2007) ...............................................................................17

*Wood v. Baum*,
  953 A.2d 136 (Del. 2008) .................................................................................................10

*Zapata Corp. v. Maldonado*,
  430 A.2d 779 (Del. 1981) .................................................................................................20

*Zomolosky v. Kullman*,
  --- F. Supp. 3d ----, 2014 WL 4543007 (D. Del. Sept. 12, 2014) ......................11, 12, 13, 17


## Statutes

Cal. Corp. Code § 2115 ...........................................................................................................5, 7

Cal. Corp. Code § 2116 ........................................................................................................ *passim*


## Other Authorities

2 McLaughlin on Class Actions § 9:12 (11th ed. Supp. 2014) ...................................................10

9 Witkin, Summary 10th, ch. XIII (2005) ...................................................................................6

11 Fletcher Cyc. Corp. § 5321 (Supp. 2014) .............................................................................14

Restatement (Second) of Conflict of Laws § 6 (1971) ................................................................7

Restatement (Second) of Conflict of Laws § 304 (1971) ............................................................5

Restatement (Second) of Conflict of Laws § 309 (1971) ............................................................7

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1

Preliminary Statement

2      Plaintiffs concede that their claims fail under Bermuda law, and that should be the end of

3 this action.[1]  After previously acknowledging that Bermuda law governs their claims in no less

4 than four iterations of their complaint, plaintiffs suddenly urge the Court to apply California law to

5 their claims, ignoring precedent and their own admissions to the contrary.  No amount of citations

6 to inapposite cases or *dicta* can change the settled rule that the law of the place of incorporation

7 governs claims such as these, or eliminate the California statute (which plaintiffs inexplicably fail

8 to cite) that codifies the rule.  The statute, Corporations Code Section 2116, and the law applying

9 it are clear:  The law of the state of incorporation (Bermuda), not the law of California, determines

10 plaintiffs' standing to pursue direct or derivative claims.  Because plaintiffs concede that under

11 Bermuda law they have no standing, *see* Opposition ("Opp.") at 12-13, the inquiry ends there.

12      The action should be dismissed for multiple additional reasons:

13 •     Even if California law were to apply, that would make no difference to the end result.  To

14        maintain derivative claims on behalf of Marvell under California law, plaintiffs needed to

15        plead demand futility by showing there is reason to doubt that a majority of Marvell's

16        board is independent and disinterested, such that the Board would not exercise its business

17        judgment in the face of a shareholder litigation demand.  But directors are presumed to be

18        disinterested—even when named as defendants in a demand—unless they face a

19        substantial likelihood of personal liability.  No such likelihood exists here, where plaintiffs

20        are attempting to hold each individual director liable for a contested patent verdict against

21        the Company, and where any finding of individual liability would require a showing that

22        the individual directors engaged in fraud or dishonesty that plaintiffs do not and cannot

23        allege.  Plaintiffs' alternative attempt to establish futility of demand by alleging that Dr.

24        Sutardja dominates and controls the Board of Directors is based on rhetoric, not plausible

25

26 [1]  Throughout their opposition plaintiffs take considerable liberties in presenting the facts underlying this action.  Although defendants dispute plaintiffs' allegations and their recitations of

27 additional "facts" not set forth in the complaint, defendants have focused this reply on the dispositive legal points that compel dismissal of plaintiffs' claims.

28

facts necessary to survive a motion to dismiss, and likewise fails to call into question the independence and disinterestedness of a majority of the Board.

• Nor do plaintiffs' incorrect choice-of-law arguments affect the disposition of plaintiffs' direct claims. Plaintiffs' sole alleged direct injury—diminution of undeclared dividends (*i.e.*, undistributed corporate profits) that they maintain *may* occur at some time in the future *if* a series of additional events occurs—is a quintessential non-direct (derivative) injury under California law and under Bermuda law, even if it were non-speculative enough to qualify as Article III injury at all.  Plaintiffs cannot assert any direct claims.

• Plaintiffs' attempt to avoid the exculpatory provision in Marvell's Byelaws also fails. Contrary to plaintiffs' argument, exculpatory provisions can be and routinely are asserted at the pleading stage, and plaintiffs do not and cannot explain how the exculpatory provision here does not operate to bar their claims.

Finally, plaintiffs' request that the Court stay, rather than dismiss, their claims should be rejected.  As noted, (1) plaintiffs concede that their claims fail under applicable Bermuda law; (2) plaintiffs also would lack standing to pursue their claims under California law; and (3) plaintiffs' claims are barred in all events by Marvell's Byelaws.  The reasons plaintiffs offer in support of a stay—to permit Marvell's shareholders to vote for the Company to pursue these claims and to scrutinize Marvell's choice of counsel—have no bearing on plaintiffs' ability to pursue this action.  Because the multiple defects noted above are fatal and incurable, and because this case will not get better with age, plaintiffs' complaint should be dismissed with prejudice.

<u>Argument</u>

I.  <u>BERMUDA LAW APPLIES AND, AS PLAINTIFFS CONCEDE, BARS THIS ACTION</u>

Plaintiffs do not dispute that their claims must be dismissed under Bermuda law, nor do they dispute that compliance with the internal affairs doctrine results in Bermuda law applying to their claims.  Rather, they desperately urge the Court not to follow the California statute requiring application of the internal affairs doctrine, to apply instead a general, common-law "governmental interest analysis," and to conclude (under this incorrect analysis) that California law governs their claims.  Plaintiffs' argument that the statutory internal affairs doctrine should be ignored in favor

of a "governmental interest analysis" not only conflicts with their prior pleadings,[2] but it also has been rejected by California's Legislature and courts alike.

The internal affairs doctrine mandates that Bermuda law apply to derivative claims purportedly brought on behalf of Marvell, a Bermuda corporation, and to plaintiffs' direct claim for breach of fiduciary duty:  "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands."  *State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434, 442 (2003) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)).  In California, the internal affairs doctrine is codified in the Corporations Code: "[D]irectors of a foreign corporation . . . are liable to the corporation [and] its shareholders . . . for . . . violation[s] of official duty *according to any applicable laws of the state or place of incorporation or organization, whether committed or done in this state or elsewhere*."  Cal. Corp. Code § 2116 (emphasis added).  The unambiguous statute is dispositive of any choice-of-law question here.[3]  *See, e.g., Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1128 (N.D. Cal. 2011) ("Where a statute dictates the choice-of-law, the court need not apply a common law choice-of-law analysis.") (citing *Barclays Discount Bank Ltd. v. Levy,* 743 F.2d 722, 725 (9th Cir. 1984)); *Copley Press, Inc. v. Superior*

---

[2]  Relying on a case involving a *pro per* plaintiff, *Haddock v. Bd. of Dental Exam'rs*, 777 F.2d 462 (9th Cir. 1985), and another involving ERISA preemption issues, *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 430 (7th Cir. 2005), plaintiffs contend that their prior express reliance on Bermuda law can now be abandoned.  It is worth noting that all four of plaintiffs' complaints, including the latest version (filed August 15, 2014) have expressly relied on Bermuda law.  *See, e.g.*, Dkt. No. 1 at ¶¶ 47, 147, 154; Compl. ¶¶ 51, 153, 163, 169 (Dkt. No. 52); Case No. 5:14-cv-02523 LHK, Dkt. No. 1 at ¶¶ 49, 150, 157, 159; Case No. 5:14-cv-03214 LHK, Dkt. No. 1 at Ex. 1 ¶¶ 47, 148, 155.  Only after confronting the inevitable dismissal of their claims under Bermuda law have plaintiffs suddenly decided that California law must apply.

[3]  *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010), cited by plaintiffs, *see* Opp. at 8, makes clear that the governmental interest analysis applies only in the absence of a statutory directive regarding choice of law.  *Id.* at 83-87 (governmental interest analysis is "methodology for resolving choice of law issues . . . in those instances in which [the statute at issue] does not mandate application of another jurisdiction's [law]").

1   *Court*, 39 Cal. 4th 1272, 1300 (2006) (courts "'may consider common law practices . . . only if

2   they are not . . . in conflict with constitutional or statutory provisions'").

3       California courts have rejected plaintiffs' contention that the Court should apply a common

4   law governmental interest analysis notwithstanding the statute.  In *Vaughn v. LJ International,*

5   *Inc.*, 174 Cal. App. 4th 213 (2009), which plaintiffs inexplicably contend *supports* their choice-of-

6   law arguments, Opp. at 13 n.10, the California Court of Appeal held that a governmental interest

7   analysis has no bearing on what law governs claims that relate to a corporation's internal affairs.

8   The court concluded that "a close look at the analysis involved in the governmental interest

9   approach *reveals that it is inapposite to a shareholder derivative action*" because that approach

10  would "invariably result in the application of California law" whenever "the jurisdiction of

11  incorporation has little if any other contact with the company." *Id.* at 228 (emphasis added).  As

12  the Court of Appeal noted, this result would "ignor[e] the factors [of "certainty, predictability and

13  uniformity of result, ease in the application of the law to be applied and, at least on occasion,

14  protection of the justified expectations of the parties"] identified by the Restatement which . . . are

15  of great significance to corporate directors and investors who do business across state and

16  international borders." *Id.* at 227-29; *see also State Farm*, 114 Cal. App. 4th at 449 ("In sum, the

17  policyholders seek to hold State Farm liable for not declaring dividends.  As recognized by a

18  consistent line of authority, the internal affairs doctrine mandates that such liability be determined

19  under the law of State Farm's place of incorporation, Illinois.").

20      The authorities plaintiffs cite do not support a departure from the rule that the state of

21  incorporation supplies the law applicable to shareholder efforts to sue a company's directors and

22  officers.  The suggestion in *Grosset v. Wenaas*, 42 Cal. 4th 1100 (2008), that the internal affairs

23  doctrine is a factor to be considered in a governmental interest analysis is mere *dictum*; the court

24  in *Grosset* did not decide a choice-of-law question because the same result was compelled under

25  both California law and the law of the foreign state of incorporation.  *Id.* at 1119; *accord Vaughn*,

26  174 Cal. App. 4th at 227-28 (rejecting an argument similar to plaintiffs' that *Grosset* required

27  government interest analysis in shareholder suit).  In *Oncology Therapeutics Network Connection*

28  *v. Virginia Hematology Oncology PLLC*, No. C 05-3033 WDB, 2006 WL 334532 (N.D. Cal. Feb.

10, 2006), also cited by plaintiffs, the court expressed doubt that the internal affairs doctrine would apply to the alter ego/veil-piercing claims before it, but "refrain[ed] from ruling" on choice-of-law because the issue had not been adequately briefed by the parties and observed that the law in California and the foreign state of incorporation appeared "essentially the same." *Id.* at *17.[4] Notably, the remark quoted by plaintiffs included the caveat "[a]bsent authority to the contrary," *id.*, and the Court of Appeal's decision in *Vaughn* three years later is exactly such contrary authority. Finally, *Northstar Financial Advisors, Inc. v. Schwab Investments*, 609 F. Supp. 2d 938 (N.D. Cal. 2009), *rev'd and remanded*, 615 F.3d 1106 (9th Cir. 2010), does not assist plaintiffs either. The district court there deferred deciding whether the internal affairs doctrine would apply because the plaintiff had asked for leave to replead. *Id.* at 949.

Plaintiffs also cite two cases—the more recent of which was decided over 50 years ago—for the notion that "California courts have rejected application of the law of the place of incorporation," but again these cases undermine their arguments. In *Western Airlines, Inc. v. Sobieski*, 191 Cal. App. 2d 399 (1961), the Court of Appeal upheld the Commissioner of Corporations' application of certain cumulative voting requirements to a "pseudo foreign corporation." In 1975, the Legislature codified *Western Airlines* and defined exactly when the narrow "pseudo foreign" exception to the internal affairs doctrine will apply. *See* Cal. Corp. Code § 2115; *Wilson v. Louisiana-Pac. Res., Inc.*, 138 Cal. App. 3d 216, 223 (1982). In doing so, the Legislature *expressly excluded* corporations listed on major national exchanges, including the NASDAQ Global Market on which Marvell is listed, from the scope of the "pseudo foreign" exception.[5] Cal. Corp. Code § 2115(c); RJN Ex. A. The Legislature's statutory exclusion of

---

[4]  Similarly, in *Shields v. Singleton*, 15 Cal. App. 4th 1611, 1621 (1993), defendants "d[id] not argue that a different result would obtain if Delaware, rather than California, law is applied, or even that the laws of the two jurisdictions are in conflict." Here, although dismissal of this action is also required under California law, *see infra* Sections II & III, there is no dispute that the laws of California and Bermuda are substantively very different.

[5]  This makes sense in light of the federal regulation of securities traded on these exchanges and their global reach. *See, e.g.*, *Wilson*, 138 Cal. App. 3d at 230-31 (noting "higher degree of scrutiny . . . in the marketplace" may be an "adequate substitute" for regulation by section 2115);
  (footnote continued)

corporations such as Marvell from its codification of *Western Airlines* obviously defeats plaintiffs'

argument that California law applies to Marvell as a "*de facto* California corporation" based on

*Western Airlines*.  *See* Opp. at 9-10.[6]

The earlier case cited by plaintiffs, *Sharp v. Big Jim Mines*, 39 Cal. App. 2d 435 (1940),

determined only that a California court could exercise *jurisdiction* over matters concerning the

internal affairs of a foreign corporation (an issue not in dispute here) and did not decide any

choice-of-law issue.  *Id.* at 438, 442; *accord* 9 Witkin, Summary 10th, ch. XIII, Corporations,

§ 239 at 1005 (2005) (discussing bases for "taking jurisdiction"), *quoted in* Opp. at 12.  Notably,

the unremarkable principle that a California court can adjudicate matters involving foreign

corporations' affairs was codified 35 years later in the *same* statute that codified the internal

affairs doctrine that plaintiffs desperately seek to avoid.  *See* Cal. Corp. Code § 2116 (directors of

foreign corporations are liable to the corporation and its shareholders for breaches of duty,

regardless of where committed, according to laws of the place of incorporation, but liability may

be enforced in California courts).

Plaintiffs' only other purported example of a court not applying the internal affairs doctrine

(in a situation where the doctrine properly applies) is an Alaska state trial court decision, *see* Opp.

at 12 n.9 (citing *In re BP p.l.c. Deriv. Litig.*, No. 3AN-06-11929CI, 2007 WL 4913136, at *10-11

---

Restatement (Second) of Conflict of Laws § 304 cmt. c (1971) ("[U]niform treatment of the
shareholders of a corporation is an important objective which can only be attained by having their
rights and liabilities with respect to the corporation governed by a single law.").

[6]  In fact, Marvell is not "a *de facto* California corporation" at all.  Marvell is a holding company
that, in addition to the California-based subsidiary, has operations and property interests elsewhere
in the U.S. and in Europe, Asia, and Israel.  *See* RJN Ex. S at 34-35 & Ex. 21.1; *see also* Bottini
Decl. Ex. 4 ¶ 3 (noting that Marvell's subsidiary in Asia sold most of the products accused in
*CMU*).  Although plaintiffs' counsel testifies that "nearly 2,000 [Marvell] employees [a]re located
in California," Bottini Decl. ¶ 18, that is less than one-third of the total employees of Marvell's
subsidiaries.  RJN Ex. S at 15.  And although more than half of Marvell's shareholders *of record*
may reside in California, *see* Opp. at 5 n.3, over 88% of Marvell's shares are held in street name
(presumably by investors all over the world).  *See* RJN Ex. T.  These corrections aside, the extent
of Marvell's contacts with California is irrelevant; Marvell is not challenging jurisdiction or
seeking a transfer of venue, but rather asking the Court to apply the straightforward legal
requirements based on Marvell's incorporation under Bermuda law.

1   (Alaska Super. Ct. May 17, 2007)), that has no persuasive value.  In *BP*, the court—like plaintiffs

2   here, *see* Opp. at 12—relied on Section 309 of the Restatement (Second) of Conflict of Laws

3   (1971), which provides for the application of the internal affairs doctrine "except where, with

4   respect to the particular issue, some other state has a more significant relationship under the

5   principles stated in § 6 to the parties and the transaction, in which event the local law of the other

6   state will be applied."  The very first of the "principles stated in § 6," however, specifies that "[a]

7   court, subject to constitutional restrictions, *will follow a statutory directive of its own state* on

8   choice of law."  *Id.* § 6(1) (emphasis added).  Although the Alaska state trial court did not identify

9   any statutory directive in Alaska requiring application of the internal affairs doctrine, California's

10  Section 2116 does require its application.[7]  The California Legislature's codification of the internal

11  affairs doctrine in Section 2116, and its enactment of a narrow exception to it in Section 2115 that

12  does not apply, plainly differentiate this case from *BP* and make plaintiffs' attempt to rely on

13  Section 309 of the Restatement inappropriate.[8]

14          Even if the Court were to apply a governmental interest analysis (contrary to Section

15  2116), the uniformity and predictability of the internal affairs doctrine and California's statutory

16  directive to apply it would substantially outweigh California's interest in applying California law

17  _____

18  [7]   Plaintiffs fail to disclose that a federal court subsequently applied the internal affairs doctrine to
    a case arising from the same nucleus of facts that was before the Alaska state trial court in *BP*.

19  *See In re BP p.l.c. Deriv. Litig.*, 507 F. Supp. 2d 302, 305-06 & n.8, 310 (S.D.N.Y. 2007)
    (rejecting the argument that a court could apply a "public policy" exception to New York's

20  internal affairs doctrine where law of state of incorporation would not recognize plaintiff's claim).

21  [8]   In several other cases cited by plaintiffs, the internal affairs doctrine did not apply because there
    was no conflict of laws, or because the claims were not brought by shareholders.  *See, e.g.*,

22  *Havlicek v. Coast-to-Coast Analytical Servs., Inc.*, 39 Cal. App. 4th 1844, 1854 (1995) (no
    irreconcilable conflict of laws); *In re Refco Inc. Sec. Litig.*, 892 F. Supp. 2d 534, 535 (S.D.N.Y.

23  2012) (common law claim for aiding and abetting fraud against customers); *Parkinson v. Hyundai

24  Motor Am.*, 258 F.R.D. 580, 598-99 (C.D. Cal. 2008) (consumer protection claims); *Good v.
    Nippon Yusen Kaisha*, No. 12-cv-1882-AWI-MJS, 2013 WL 2664193, at *6-7 (E.D. Cal. June 12,

25  2013) (analyzing whether contractual forum selection clause impaired Carriage of Goods by Sea
    Act liability).  Plaintiffs also cite inapposite cases applying California's "blue sky" securities laws,

26  not asserted here, to securities offerings by foreign corporations.  *See, e.g.*, *Diamond Multimedia

27  Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1044 (1999).  Such cases have nothing to do with
    the law that applies to fiduciary duty claims, which is specified by Section 2116.

28

to claims by shareholders of foreign corporations.  *See, e.g.*, *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 467-68 (1992) (in bank) (noting that states of incorporation have "a keen and intimate interest in internal corporate affairs, including the purchase and sale of [] shares, as well as corporate management and operations" of corporations organized under their laws); *cf. Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991) ("[Unless inconsistent with policies underlying a federal statute providing the basis for a derivative claim], a court that is entertaining a derivative action . . . must apply the demand futility exception as it is defined by the law of the State of incorporation.").  California's interests, if any, will not be impaired by applying Bermuda law to claims by shareholders of a Bermuda corporation.

Finally, there is no truth to plaintiffs' claim that "applying Bermuda law would effectively immunize Defendants from liability" for "egregious" conduct.  *See* Opp. at 11.  That Bermuda law precludes these individual shareholders and their counsel from pursuing claims that belong to the Company because they cannot meet any of the exceptions to the rule in *Foss* does not mean that the *Company* has no recourse against its directors if the directors were to have engaged in conduct that constituted "fraud or dishonesty."  The Company—as controlled by a majority vote of its shareholders rather than a tiny minority—can always elect to pursue any claims that it or the majority of its shareholders view as meritorious.  *See, e.g.*, Moore Decl. ¶¶ 84-88.  That Bermuda law does not empower four individual shareholders to pursue claims in the Company's name hardly means the Company lacks a remedy.  *Accord City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1304 (D.C. Cir. 2009) ("That [plaintiff] prefers a derivative suit to other available remedies does not mean that 'no adequate remedy' exists.").

Under any analysis, Bermuda law applies, and (as plaintiffs concede) bars this action.[9]

---

[9]  Plaintiffs' repeated insinuations that there is something sinister about incorporating somewhere other than the principal place of business ignore corporate reality; no one could credibly argue, for example, that Delaware law applies only to Delaware corporations that have their principal places of business there.  *Accord Vaughn*, 174 Cal. App. 4th at 224 ("Like Delaware and other similar locations, the BVI is used as a place of incorporation by businesses not located there for a variety of reasons, including enhancing confidence that a predictable legal framework will govern the relationship between investors and the corporation.  This is a salutary purpose.").

II.     PLAINTIFFS LACK DERIVATIVE STANDING EVEN UNDER INAPPLICABLE CALIFORNIA LAW

Although Bermuda law governs plaintiffs' standing to pursue their claims, defendants note that plaintiffs have also failed to satisfy the prerequisites under California law for bringing derivative claims because they have failed to establish demand futility.  "The test for proving demand futility is whether the facts show a reasonable doubt that (1) the directors are disinterested and independent, and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."  *Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 587, *as modified on denial of reh'g* (2001).

Under California law—which plaintiffs contend is identical to Delaware law in this regard, *see* Opp. at 13 n.11—to show demand futility for claims based on failure to act, a plaintiff must set forth facts that "create a reasonable doubt that, as of the time the complaint [wa]s filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993).  "At the pleading stage, Board independence and compliance with the business judgment rule are presumed. . . . Demand will be excused only if the plaintiff's allegations show the defendants' actions 'were so egregious that a substantial likelihood of director liability exists.'"  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir.), *as amended* (1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008).  Facts showing that the directors would face a "substantial likelihood" of personal liability by complying with a shareholder's demand to pursue litigation may challenge the independence or disinterestedness of directors.  *Rales*, 634 A.2d at 936.  Plaintiffs cannot meet these standards.

A.      None of Marvell's Directors—Much Less a Majority—Faces a Substantial Likelihood of Liability

Plaintiffs first contend that they have pleaded demand futility because each director faces a substantial likelihood of liability.  *See* Opp. at 14-17.  Because Marvell's Byelaws (like most companies' bylaws) protect its directors from liability for claims not involving fraud or dishonesty, *see* Opening Br. ("Br.") at 18, plaintiffs had to plead particularized facts

demonstrating that the directors *knew* that their conduct was legally improper.  *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008); *see also* 2 McLaughlin on Class Actions § 9:12 (11th ed. 2014) ("The inclusion in the company's charter of an exculpatory provision . . . makes it considerably more difficult to establish a substantial likelihood of liability because plaintiff must plead particularized facts showing bad faith in order to establish a substantial likelihood of personal liability.").

With respect to four of the five directors on Marvell's board (Gromer, Kassakian, Krueger, and Thakur), plaintiffs allege only that these directors are "sophisticated and accomplished scientists with advanced degrees in electrical engineering or physics" and have many patents.  *See* Opp. at 15-16.  From these facts they then make the illogical and unsupported leap that these outside directors must "therefore [have] understood the importance and utility of CMU's patents in relation to Marvell's products," *id.* at 16, even though there are no allegations that any of these directors was even aware of CMU's patents before CMU filed suit, and certainly no specific facts suggesting that they knew Marvell was infringing any CMU patents and that CMU's patents were not invalid (both conclusions that Marvell vigorously disputes).  Nor is there any basis to infer that any of these individuals was aware of or privy to the "communications among Marvell's engineers" that plaintiffs contend evidence knowledge of infringement.  *Id*.

Recognizing that they cannot allege actual knowledge of infringement by these outside directors, plaintiffs contend incorrectly that directors are presumed to "know all information" regarding their companies' core businesses, and that each of these individuals thus must have known of the purported patent infringement because "patents are Marvell's core business."  *Id.* The cases cited by plaintiffs offer no support for their "director omniscience" theory.  In *Pfeiffer v. Toll*, 989 A.2d 683, 692 (Del. Ch. 2010), *abrogated by Kahn v. Kolberg Kravis Roberts & Co.*, 23 A.3d 831 (Del. 2011), the court found that under a "plaintiff-friendly 12(b)(6) standard"—which does not apply here, *see id.*; Br. at 22-23—the plaintiffs had sufficiently alleged knowledge for purposes of an insider trading claim because the inside information the defendants allegedly had traded on included key forecasts that the company admitted it studied closely at its highest levels. The Delaware Chancery Court in *Pfeiffer* expressly distinguished those allegations from allegations of knowledge similar to those here that depend on directors "uncover[ing] financial

1    fraud, second-guess[ing] technical accounting judgments, or know[ing] about concerns expressed

2    by low-level employees within the organization." 989 A.2d at 693-94.  In the other cases

3    plaintiffs cite, courts imputed knowledge that the FDA had put on hold the company's principal

4    product to directors of a pharmaceutical company, *see In re Biopure Corp. Deriv. Litig.*, 424 F.

5    Supp. 2d 305, 308 (D. Mass. 2006), and that the FAA had launched an investigation of a

6    "systematic problem" with maintenance issues to the directors of an airline, *No. 84 Employer-*

7    *Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 926 (9th Cir.

8    2003); these holdings suggest at most that knowledge of the *CMU* lawsuit might be imputed to

9    Marvell's directors, not that they can be presumed to have known whether Marvell's products

10   infringed any valid CMU patents.

11          Even as to Dr. Sutardja, the only director as to whom plaintiffs attempt to allege actual

12   knowledge of patent infringement, plaintiffs argue only that they have alleged that (1) he knew

13   about two letters sent in 2003, Opp. at 15; (2) he is "an accomplished electrical engineer with a

14   doctoral degree" and "'hands on' manager' who 'held weekly staff meetings with his senior vice-

15   presidents,' including Dr. Doan and Dr. Zining Wu, both of whom worked on the 'Kavcic

16   method,'" *id.*; and (3) "[Dr.] Sutardja and other Marvell engineers failed to follow [Marvell's]

17   internal policy concerning steps to be taken when becoming aware of risks regarding potential

18   patent infringement." *Id.*   Here too, the allegations do not add up to knowledge of patent

19   infringement.  Regarding the two letters, the August 2003 letter from CMU was merely an offer to

20   license two CMU patents (without any assertions of infringement), *see* Compl. ¶ 82; RJN Ex. U;

21   although plaintiffs do not actually allege that Dr. Sutardja was aware of the second letter (sent by

22   Fujitsu in November 2004), *see* Compl. ¶ 86, that letter in any event merely sought Marvell's

23   opinion regarding a similar license offer Fujitsu had received from CMU.  *Id.* ¶ 83, RJN Ex. V.

24   Neither weekly meetings with staff nor Marvell's purported lack of inquiry into infringement after

25   receiving the CMU and Fujitsu letters approaches actual knowledge of infringement either.

26          Were there any doubt on the point, *Zomolosky v. Kullman*, --- F. Supp. 3d ----, 2014 WL

27   4543007 (D. Del. Sept. 12, 2014), has now confirmed that there cannot be a "substantial

28   likelihood" of director liability on the facts of this case.  In *Zomolosky*, the Delaware district court

dismissed a very similar case for failure to plead demand futility under Delaware law. There, a shareholder sought to hold DuPont's board of directors liable after a jury had found that DuPont had willfully infringed certain patents owned by Monsanto and had awarded Monsanto $1 billion, leading to settlement under which DuPont had to pay $1.75 billion (plus future royalties). *Id.* at *4. In the ensuing shareholder litigation, the plaintiff alleged (as here) that DuPont's board "did not act to prevent infringement of Monsanto's patents ... and that the board condoned wrongdoing, e.g., as demonstrated by increasing [the CEO's] compensation." *Id.* at *6. Plaintiff there (as here) "s[ought] to establish that the board members face[d] a 'substantial likelihood' of personal liability because of their failure of oversight in the face of the 'red flags,' including the 'repeated infringement settlements' and the culture of 'infringe first and litigate later.'"[10] *Id.* at *7.

In the face of these highly similar allegations, the Delaware district court observed:

> [T]his is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." ... "[L]iability for such a failure to oversee requires a showing that the directors *knew* they were not discharging their fiduciary obligations or that they demonstrated a *conscious* disregard for their duties."

*Id.* at *7 (emphasis in original). The court found that allegations that the board received business plans and updates regarding new products and research status, which plaintiffs contended would have alerted the board to infringement and potential for subsequent litigation, were "not sufficient for the court to infer that the board members knew that such research was infringing and, therefore, were not discharging their duties or were consciously disregarding such duties." *Id.* at *8. The court also found insufficient plaintiff's "conclusory" allegations "that the board failed to 'put in place meaningful policies and procedures' to prevent infringing conduct" because plaintiff "ha[d] not proffered factual allegations to support his contention that such reliance was not reasonable." *Id.* The Delaware district court concluded that because "DuPont's charter absolves its board of personal liability for breaches of fiduciary duty except those based on fraudulent, illegal, or bad faith conduct," plaintiff's allegations were "insufficient to infer that the directors

---

[10]   The court declined to "infer a 'pattern of unlawful infringement'" from prior litigation that (like many allegations here) had occurred "ten years prior" and was based on different facts. *Id.*

1  had constructive knowledge that DuPont was infringing and that failure to prevent such

2  infringement was a breach of their fiduciary duties," and thus plaintiff had not established a

3  substantial likelihood of liability that would establish demand futility.  *Id.*  The very similar

4  allegations in this case likewise cannot establish demand futility.

5      B.      Plaintiffs' Unsupported Allegations That Dr. Sutardja Controls the Board or Has
                Engaged in "Self-Dealing" Do Not Establish Demand Futility

6

7           In an argument long on rhetoric and short on factual support, plaintiffs also assert that

8  directors Gromer, Kassakian, Krueger, and Thakur "cannot independently and disinterestedly

9  consider a demand to bring suit" against the Sutardjas or Ms. Dai because (according to plaintiffs)

10  Dr. Sutardja "exercise[s] iron-fisted control over Marvell's Board."  Opp. at 18.  An initial

11  problem with this argument is that it assumes plaintiffs have adequately alleged Dr. Sutardja

12  himself is not disinterested; as discussed above, however, plaintiffs cannot plead facts showing

13  that Dr. Sutardja faces a "substantial likelihood of liability" that would cast doubt on his

14  disinterestedness.  The second problem is that plaintiffs fail to point to any facts explaining *how*

15  Dr. Sutardja exerts supposed control over the Board: Plaintiffs have alleged no material financial

16  or other dependency of these sophisticated outside directors that would cause them to bend their

17  business judgment to Dr. Sutardja's will.  Thus, this case is unlike cases cited by plaintiffs where

18  an interested director was found to control the board through lucrative contracts or past, present, or

19  future employment opportunities.  *See, e.g.*, *TVI Corp. v. Gallagher*, No. CV 7798-VCP, 2013 WL

20  5809271, at *8 (Del. Ch. Oct. 28, 2013) (finding reason to doubt directors of closely-held

21  foundation involved in "interrelated transactions" were independent); *In re Trump Hotels S'holder*

22  *Deriv. Litig.*, No. 96 CIV. 7820 DAB, 2000 WL 1371317, at *8 (S.D.N.Y. Sept. 21, 2000).  That a

23  director might lose his seat on the Board or his director compensation—which is *at most* what

24  plaintiffs plead here—is insufficient to create a reasonable doubt about his or her independence.

25  *Trump Hotels*, 2000 WL 1371317, at *8; *In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp.

26  265, 271 (S.D.N.Y. 1986) ("Receipt of director's fees does not suggest a conflict of interest.  If it

27  did, every director who receives a director's fee would biased.").

28

1    Plaintiffs' argument that "self-dealing" by Dr. Sutardja renders demand futile, *see* Opp.

2  § III.B.3, is also unavailing.  Plaintiffs fail to explain how receipt of incentive compensation can

3  qualify as "self-dealing" when Dr. Sutardja did not set his own compensation and the performance

4  benchmarks for that compensation unquestionably were achieved; as set forth in the moving

5  papers, it is not sufficient for plaintiffs to allege the Company *may* eventually incur a loss that

6  offsets the Company's gains to establish "self-dealing."  *See* Br. at 20.  And, regardless, Dr.

7  Sutardja is only one director of five and does not constitute a majority of the Board.

8    As the foregoing shows, plaintiffs would fare no better in maintaining a derivative claim

9  under California law if it applied (which it does not) because they cannot plead demand futility.

10  Under California or applicable Bermuda law, plaintiffs lack standing to pursue derivative claims.

11  III.    <u>PLAINTIFFS HAVE NOT ALLEGED A DIRECT INJURY UNDER ANY LAW</u>

12    Plaintiffs make little effort to defend their attempt to plead direct claims based on

13  allegations that there *may* be diminution of dividends at some future time.  Opp. at 22-23.  Such an

14  alleged injury is plainly derivative in nature under either Bermuda *or* California law.

15    Speculative diminution in a company's ability to pay future, *undeclared* "dividends" is, in

16  reality, just an injury to the company's profits.  *Sprouse v. Comm'r of Internal Revenue*, 122 F.2d

17  973, 976 (9th Cir. 1941) *aff'd sub nom. Helvering v. Sprouse*, 318 U.S. 604 (1943); 11 Fletcher

18  Cyc. Corp. § 5321 (Supp. 2014) ("[P]rofits belong to the corporation and not its shareholders until

19  the declaration of a dividend.").  Indeed, a dividend does not exist in any form until it is declared,

20  that is, announced by the board, *id.*; before then, it is simply undistributed corporate profit.  For

21  this reason, if it is non-speculative enough to qualify as an injury at all, a threatened diminution in

22  dividends the Company has not declared is nothing other than a decline in corporate profits –

23  which gives rise to a derivative, not a direct, claim.  *See* Br. at 8-9 (citing Bermuda law); *Jones v.*

24  *H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 107 (1969) (an individual or direct cause of action exists only

25  "[i]f the injury is not incidental to an injury to the corporation"); *see also Nelson v. Anderson*, 72

26  Cal. App. 4th 111, 127, *as modified on denial of reh'g* (1999) ("When the injury is to the 'whole

27  body of stock,' the action must be derivative.").

28    Contrary to plaintiffs' argument, *see* Opp. at 22, the statement in *Jones v. H.F. Ahmanson*

1   that an "'action is derivative . . . if the gravamen of the complaint is injury to the corporation, or to

2   the whole body of its stock or property without any severance or distribution among individual

3   holders," *see* 1 Cal. 3d at 106, does not support plaintiffs' attempt to pursue direct claims here.

4   There has been no "severance or distribution among individual holders" with respect to dividends

5   the Company has not declared because the funds at issue are merely corporate profits.  "[T]he

6   gravamen of the complaint" in this case – that profits may be diminished based on the patent

7   judgment against the Company – is plainly "injury to the corporation" as a whole.  *Cf. id.* at 107

8   (plaintiff could pursue a direct claim because plaintiff did "not contend that the diminished value

9   reflects an injury to the corporation and resultant depreciation in the value of the stock" and the

10   gravamen of the claim was injury to minority stockholders only, not to the corporation or the stock

11   as a whole).  Plaintiffs have failed to plead any injury here that could give rise to direct claims.[11]

12          Even if possible diminution of future dividends *could* give rise to a direct claim (and it

13   cannot), plaintiffs have failed to establish that their highly speculative allegations of dividend

14   impairment in this case are concrete enough to confer Article III standing, and their direct claims

15   should be dismissed on this alternate ground as well.  Plaintiffs do not dispute that any injury they

16   claim as direct injury in this case depends on Marvell ultimately being required to pay the *CMU*

17   judgment, such payment materially affecting Marvell's ability to pay dividends, and Marvell

18   nonetheless declaring a dividend that it cannot pay.  These three very large "ifs" defeat Article III

19   standing.  *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ("[W]e have

20   repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in

21   fact,' and that '[a]llegations of *possible* future injury' are not sufficient") (emphasis in original);

22

23   _____

24   [11]    Plaintiffs misrepresent that defendants "concede" that lack of "sufficient cash reserves at
     Marvell to pay dividends" would confer standing on plaintiffs to bring direct claims under
25   Bermuda law.  *See* Opp. at 24.  As set forth in defendants' opening brief, Bermuda law recognizes
     direct claims by shareholders for *declared* but unpaid dividends.  Plaintiffs do not (and cannot)
26   allege that Marvell has failed to pay any declared dividend, and plaintiffs have no "right" to
     undeclared dividends in the future.  *See* Br. at 9 n.7.  Under Bermuda law it is clear that any
27   diminution of undeclared dividends is a "reflective loss" that derives entirely from a loss to the
     Company and does not give rise to a direct claim.  Br. at 8-10.

28

1  *cf. In re Adobe Sys., Inc. Privacy Litig.*, No. 13-CV-05226-LHK, 2014 WL 4379916, at *8 (N.D.

2  Cal. Sept. 4, 2014) (finding alleged future harm was "sufficiently concrete and imminent" where

3  hackers spent weeks collecting personal data, including plaintiffs' data, from defendant's servers

4  because "there [wa]s no need to speculate as to whether Plaintiffs' information had been stolen

5  and what information was taken").

6  IV.    PLAINTIFFS' CLAIMS SHOULD ALSO BE DISMISSED UNDER RULE 12(B)(6)

7          In addition to dismissing the complaint because plaintiffs lack standing to bring the

8  Company's claims derivatively and have no direct claims, the Court should also dismiss the

9  complaint because it fails to assert a claim that is not barred as a matter of law by the exculpatory

10  provision in Marvell's Byelaws.  *See* Br. at 18-21.  Plaintiffs make only two arguments with

11  respect to the exculpatory provision.  First, they claim that the exculpatory provision is an

12  affirmative defense that cannot be considered at the pleading stage.  This is not the law.  *See, e.g.*,

13  *Malpiede v. Townson*, 780 A.2d 1075, 1092 (Del. 2001) (cited by plaintiffs) ("The [exculpatory

14  provision bar] may be raised on a Rule 12(b)(6) motion to dismiss[.]"), *cited in In re Verifone

15  Holdings, Inc. S'holder Deriv. Litig.*, No. C 07-06347 MHP, 2009 WL 1458233, at *10 (N.D. Cal.

16  May 26, 2009).[12]   Second, plaintiffs rely on the language of exculpatory provisions permitted

17  under Delaware law (not at issue here) to contend that exculpatory provisions do not apply to

18  "intentional misconduct done in bad faith."  Opp. at 21.  This is not the correct standard because

19  the exculpatory provision here—provided for by Bermuda law—only excludes "fraud or

20  dishonesty," and because, as noted in the moving papers, even allegedly willful patent

21  infringement does not amount to fraud or dishonesty.  *See* Br. at 18-19.[13]   In any event, even

22  applying the inapplicable Delaware standard, plaintiffs have failed to plead that the directors had

23  _____

24  [12]   *Malpiede*, a state court case, suggests that where an exculpatory provision is first introduced on
     a motion to dismiss, the motion should be converted to a motion for summary judgment.  780

25  A.2d at 1092.  Here, however, plaintiffs addressed the exculpatory provision in their complaint,
     and it is properly considered on a motion to dismiss.  *See id.*; Compl. ¶ 163.

26  [13]   Contrary to plaintiffs' suggestion, *see* Opp. at 21, defendants' citation to consistent Delaware

27  law does not mean they contend Delaware law governs this issue.   Marvell's exculpatory
     provision is provided for and consistent with Bermuda law.  *See* Br. at 18.

28

1    any knowledge of infringement that could cause their conduct to fall outside the scope of the

2    exculpatory provision.  *See, e.g.*, *Zomolosky*, 2014 WL 4543007, at *8.  Plaintiffs' complaint

3    should be dismissed for failure to state a claim.

4    V.    THIS ACTION SHOULD BE DISMISSED WITH PREJUDICE, NOT STAYED

5         Finally, in response to plaintiffs' request that the Court stay, rather than dismiss, this

6    action, *see* Opp. at 25-26, there is no reason to delay the inevitable.  None of plaintiffs' arguments

7    in support of a stay makes dismissal inappropriate:

8         First, plaintiffs argue the case should be stayed so that they may seek to convene a special

9    shareholder meeting and attempt to persuade shareholders holding a majority of Marvell's stock to

10   vote to pursue plaintiffs' claims.  However, even *if* plaintiffs convened such a meeting and even *if*

11   they could obtain a majority vote to pursue these claims, the result would be that *Marvell* would

12   then pursue its claims directly (presumably through a special committee).  Such a vote would not

13   imbue plaintiffs with derivative standing to pursue Marvell's claims under *Foss v. Harbottle*, and

14   *plaintiffs* still would not have a viable derivative (or direct) claim.[14]

15        For this reason, it is unsurprising that courts routinely dismiss—rather than stay—actions

16   where plaintiffs have failed to establish an exception to the rule in *Foss*.  *See, e.g.*, *City of Harper

17   Woods*, 589 F.3d at 1294 (affirming dismissal where plaintiff could not show exception to rule in

18   *Foss*); *Winn v. Schafer*, 499 F. Supp. 2d 390, 399 (S.D.N.Y. 2007) (same); *Erie Cnty. Emps. Ret.

19   Sys. v. Isenberg*, No. CIV. A. H-11-4052, 2012 WL 3100463, at *9 (S.D. Tex. July 30, 2012)

20   (dismissal without leave to replead where plaintiff could not show exception to rule in *Foss* under

21   Bermuda law); *In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d 94, 95, 103 (D.N.H. 2004) (same); *accord*

22

_____

23   [14]   In this important regard, the authorities cited by plaintiffs in support of a stay are inapposite; in

24   each there were pending or imminent collateral proceedings that were likely to affect the viability
     of the plaintiff's claims.  *See, e.g.*, *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243

25   (9th Cir. 1989) (stay was appropriate where court declined jurisdiction pending resolution of state
     action based on *Colorado River* abstention); *Von Hoffburg v. Alexander*, 615 F.2d 633, 640 (5th

26   Cir. 1980) (staying claim to permit plaintiff to exhaust remedies before military agency);
     *Jorgensen v. United States*, No. C 03-00188 MJJ, 2004 WL 3267262, at *8 (N.D. Cal. Feb. 17,

27   2004) (staying action upon joint request to permit review of alternate claim by agency).

28

*Vaughn*, 174 Cal. App. 4th at 230 (affirming decision sustaining demurrer without leave to amend for failure to comply with BVI derivative standing requirement); *cf. Charter Twp. of Clinton Police & Fire Ret. Sys. v. Martin*, 219 Cal. App. 4th 924, 934 (2013) ("Obviously, if the complaint fails to allege sufficient facts which, if true, would demonstrate the futility of a demand, it is entirely appropriate to terminate the action on a motion to dismiss.").[15]

Even if obtaining majority support at a special meeting of shareholders *would* revive plaintiffs' derivative claims (it would not), courts generally decline to burden their dockets with lingering litigation while plaintiffs attempt to cure defective claims. *See, e.g.*, *In re Merrill Lynch & Co., Inc., Sec. Deriv. & ERISA Litig.*, 597 F. Supp. 2d 427, 431 (S.D.N.Y. 2009) (declining to stay rather than dismiss action pending Board's response to shareholder demand because the Board "should be allowed to make its determination free from the pressure of pending litigation"); *In re Sapient Corp. Deriv. Litig.*, 555 F. Supp. 2d 259, 264 n.43 (D. Mass. 2008) (denying request to stay action while Board considered plaintiff's mid-suit demand); *see also Strong ex rel. Tidewater, Inc. v. Taylor*, No. CIV. A. 11-392, 2013 WL 818893, *1-2, 4-5 (E.D. La. Mar. 5, 2013) (denying motion to stay pending resolution of plaintiff's post-filing demand on board and dismissing claims with prejudice because "[u]ltimately, the Court does not believe that a stay is an appropriate mechanism to allow Plaintiff to shop for viable causes of action that are not yet in existence at this late time").

Moreover, there already has been a meeting of shareholders since plaintiffs alleged wrongdoing by the Individual Defendants, and the lack of action at that meeting confirms that a shareholding majority would not seek to substitute its views for the Board's on these issues.

---

[15]   Although plaintiffs suggest that their suit should be stayed to permit Marvell to benefit from any tolling of limitation periods if Marvell were to decide to pursue these claims, plaintiffs fail to identify a single statute of limitations that is in any danger of expiring that had not already expired when plaintiffs filed suit.  This is not surprising, given that all of plaintiffs' allegations concern *either* previously litigated, years-old, fully-resolved matters or the recent *CMU* judgment, a purported injury that has yet to, and may never be, realized.  Regardless, plaintiffs' failure to seek shareholder approval to pursue these claims in the first instance is no reason to "allow[] this suit to languish over the next weeks or months." *Strong*, 2013 WL 818893, at *4.

Marvell held an annual shareholder meeting on July 1, 2014 in Santa Clara, *see, e.g.*, Bottini Decl. Ex. 5 at 1; RJN Ex. W at 2, nearly three months after plaintiffs filed this action on April 7, 2014 and nearly a month after the lawsuit was disclosed in Marvell's public filings, *see, e.g.*, RJN Ex. X at 19 (Form 10-Q filed June 5, 2014). Confirming that plaintiffs are in a small minority in their purported dissatisfaction with the Board's decisionmaking, an overwhelming majority of shares were voted in favor of re-electing the entire Board. *See, e.g.*, RJN Ex. W at 2.[16] If shareholders owning a majority of the outstanding shares wanted to pursue claims against the Individual Defendants, they would not have elected five of them to Marvell's five-person Board.

Second, plaintiffs contend that the Court should not dismiss this action because Marvell supposedly lacks "independent" counsel, and that counsel is biased toward defendants. *See* Br. at 27-30. Obviously, "independence," or a purported lack thereof, is irrelevant to advising the Court that plaintiffs lack standing or have failed to state a claim. Each of the cases plaintiffs cite in which a court declined to dismiss an action or approve a settlement arose in the context of a purportedly independent recommendation of the company, not a Rule 12 motion to dismiss. *See, e.g.*, *Greenspun v. Bogan*, 492 F.2d 375, 378, 383 (1st Cir. 1974) (affirming approval of settlement recommended by company); *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1187 (N.D. Cal. 1993) (declining to approve settlement approval recommended by company's board); *In re Par Pharm., Inc. Deriv. Litig.*, 750 F. Supp. 641, 645 (S.D.N.Y. 1990) (denying company's motion to dismiss action in favor of other contemplated action based on company's

---

[16]   As disclosed in Marvell's Form 8-K filed July 2, 2014, *see* RJN Ex. W, the Company's shareholders voted on the director candidates as follows:

| Director Candidate | For | Against | Abstain | Broker Non-Votes |
|---|---|---|---|---|
| Dr. Sehat Sutardja | 329,960,359 | 12,215,946 | 7,409,071 | 88,938,523 |
| Dr. Juergen Gromer | 330,599,054 | 14,254,732 | 4,731,590 | 88,938,523 |
| Dr. John G. Kassakian | 330,484,020 | 14,224,817 | 4,876,539 | 88,938,523 |
| Arturo Krueger | 327,791,594 | 17,058,526 | 4,735,256 | 88,938,523 |
| Dr. Randhir Thakur | 330,606,470 | 14,257,227 | 4,721,679 | 88,938,523 |

recommendation); *Zapata Corp. v. Maldonado*, 430 A.2d 779, 781 (Del. 1981) (reviewing motion to dismiss based on company's recommendation that action was not in company's best interest). These authorities are uniformly inapposite on this motion because the many reasons plaintiffs' claims here should be dismissed with prejudice are not based on any sort of company recommendation, but rather relate to incurable legal defects in the claims themselves.

Although defendants dispute plaintiffs' conflict-of-interest assertions,[17] they are irrelevant to this motion: Dismissal with prejudice does not depend on Marvell's recommendation, or the identity or neutrality of its counsel. Indeed, even if Marvell *wanted* plaintiffs' meritless claims to go forward (it does not) or had filed the claims itself, that would be insufficient to save them on a motion by any defendant. Plaintiffs' argument that Marvell purportedly lacks "independent" counsel has no bearing on whether their claims can survive given the incurable problems of (1) plaintiffs' lack of derivative or direct standing; and (2) the exculpatory provision in Marvell's Byelaws that bars plaintiffs' claims. Plaintiffs' complaint should be dismissed with prejudice.

Conclusion

For the reasons set forth above and in defendants' opening brief, plaintiffs' complaint should be dismissed with prejudice and without leave to amend.[18]

DATED: November 25, 2014         QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP


                                 By  /s/ Harry A. Olivar, Jr.
                                    Harry A. Olivar, Jr.
                                    *Attorneys for Defendants*

---

[17]  Defendants dispute plaintiffs' allegations that Quinn Emanuel is "conflicted," *id.* at 27, in representing Marvell and the Individual Defendants at this stage. *See, e.g.*, *Respler v. Evans*, No. CV 13-1097-SLR, 2014 WL 631668, at *2 (D. Del. Feb. 18, 2014) ("[I]n derivative actions, there exists no conflict of interest between a corporation and individual director defendants at the motion to dismiss stage, therefore, a law firm may represent all defendants without impropriety.").

[18]  Plaintiffs do not ask the Court for leave to amend, nor do they suggest there are allegations they could add to remedy any of the defects in their claims, even though they have had access to the entire *CMU* trial transcript and exhibits since August 29, 2014.

1

## ATTESTATION

2        I, Valerie Roddy, am the ECF User whose ID and password are being used to file this

3   Notice of Motion and Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P.

4   12(b)(1), 12(b)(6) and 9(b).   In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that

5   Harry A. Olivar, Jr. has concurred in this filing.

6

7   DATED:  November 25, 2014          */s/ Valerie Roddy*_____
                                        Valerie Roddy
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28