1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LEE VOSS, SEBASTIANO D'ARRIGO, JAMES DIBIASE, and MARIE DIBIASE, on behalf of themselves and all others similarly situated and derivatively on behalf of MARVELL TECHNOLOGY GROUP, LTD.,

              Plaintiffs,

    v.

SEHAT SUTARDJA, JUERGEN GROMER, JOHN G. KASSAKIAN, ARTURO KRUEGER, RANDHIR THAKUR, PANTAS SUTARDJA, WEILI DAI, and DOES 1-20,

              Defendants,

          – and –

MARVELL TECHNOLOGY GROUP, LTD.,

              Nominal Defendant.

Case Nos.: 14-CV-01581-LHK
           14-CV-02523-LHK
           14-CV-03214-LHK

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

1

Plaintiffs Lee Voss ("Voss"), Sebastiano D'Arrigo ("D'Arrigo"), James DiBiase ("James DiBiase"), and Marie DiBiase ("Marie DiBiase") (collectively, "Plaintiffs") have brought class and shareholder derivative claims against nominal defendant Marvell Technology Group, Ltd. ("Marvell") and individual defendants Sehat Sutardja ("Sehat Sutardja"), Juergen Gromer ("Gromer"), John G. Kassakian ("Kassakian"), Arturo Krueger ("Krueger"), Randhir Thakur ("Thakur"), Pantas Sutardja ("Pantas Sutardja"), and Weili Dai ("Dai") (collectively, the "Individual Defendants" and, with Marvell, "Defendants"). ECF No. 52[1] ("Compl."). Before the Court is Defendants' Motion to Dismiss. ECF No. 53 ("Mot.").

Having considered the parties' arguments, the relevant law, and the record in this case, the Court hereby GRANTS Defendants' Motion to Dismiss with leave to amend.

# I.      BACKGROUND

## A.      Factual Allegations

Marvell, a Bermuda corporation with principal place of business in Santa Clara, California, is a publicly traded fabless semiconductor company that designs and develops a wide variety of integrated circuit devices. Compl. ¶¶ 16, 48. The company was founded in 1995 by Sehat Sutardja, along with his wife, Dai, and brother, Pantas Sutardja. *Id.* ¶ 47. The Individual Defendants are all current and former officers and directors of Marvell. *Id.* ¶¶ 17-23. Specifically, Sehat Sutardja is chief executive officer and chairman of Marvell's Board of Directors ("Board"). *Id.* ¶ 17. Dai is Marvell's president. *Id.* ¶ 23. Pantas Sutardja has held multiple offices at Marvell, including vice president and chief technology officer. *Id.* ¶ 20. The remaining individuals—Gromer, Kassakian, Krueger, and Thakur—are non-employee members of the Board at Marvell. *Id.* ¶¶ 18-19, 21-22. Sehat Sutardja, Pantas Sutardja, and Dai own approximately 19% of Marvell's stock. *Id.* ¶¶ 20, 164. Gromer, Kassakian, Krueger, and Thakur apparently own between 0.0039% and 0.0053% of Marvell's stock. *See id.* ¶ 142 (noting that "there were 503.4 million shares of Marvell common stock outstanding as of March 20, 2014);

United States District Court
Northern District of California

---

[1] Unless otherwise indicated, all ECF references are from the docket of No. 14-01581.

2

1    ECF No. 54-2 (Securities and Exchange Commission ("SEC") Form 4 stating that Gromer owns

2    24,333 shares of Marvell common stock); ECF No. 54-3 (SEC Form 4 stating that Kassakian owns

3    26,519 shares of Marvell common stock); ECF No. 54-4 (SEC Form 4 stating that Krueger owns

4    24,519 shares of Marvell common stock); ECF No. 54-5 (SEC Form 4 stating that Thakur owns

5    19,573 shares of Marvell common stock).  In total, then, the Individual Defendants own and

6    control about 20% of Marvell's stock.

7         Plaintiffs, for their part, are four shareholders who together own 23,425 shares of Marvell

8    common stock, roughly 0.0047% of the total.  Compl. ¶¶ 13-15, 142.  Plaintiffs have brought a

9    direct shareholder class action on behalf of all Marvell shareholders, as well as a shareholder

10   derivative action on behalf of Marvell, seeking to remedy alleged wrongs committed by the

11   Individual Defendants between 2003 and 2013.  *Id.* ¶ 1.  The Individual Defendants, Plaintiffs

12   allege, have breached their fiduciary duties, engaged in fraudulent and dishonest conduct by

13   willfully infringing patents held by Carnegie Mellon University ("CMU"), and unjustly enriched

14   themselves as a result.  *Id.*  According to Plaintiffs, the Individual Defendants injured Marvell and

15   its shareholders by, inter alia, causing Marvell to engage in willful patent infringement, failing to

16   prevent willful patent infringement, jeopardizing shareholders' right to dividends, making false

17   and misleading statements to shareholders by failing to disclose Marvell's willful patent

18   infringement, and earning compensation based on revenues that were inflated by such willful

19   infringement.  *Id.* ¶¶ 2, 9, 170.

20        The primary basis for Plaintiffs' claims is a lawsuit filed in 2009 by CMU in the Western

21   District of Pennsylvania accusing Marvell of willfully infringing CMU patents.  Compl. ¶ 6; *see*

22   *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.* ("*CMU I*"), 986 F. Supp. 2d 574, 599 (W.D.

23   Pa. 2013) (noting that "CMU filed its complaint in this case on March 6, 2009").  After a four-

24   week trial, the jury found on December 26, 2012, that Marvell had willfully infringed two CMU

25   patents, awarding damages to CMU in the amount of $1,169,140,271.  Compl. ¶ 2; *CMU I*, 986 F.

26   Supp. 2d at 582, 599.  In its order addressing post-trial motions and adopting the jury's finding of

27

28

Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

willfulness, the trial court in *CMU I* concluded that "CMU has shown by clear and convincing evidence that Marvell acted in disregard of an objectively high likelihood that its actions constituted infringement of a valid patent."  986 F. Supp. 2d at 632.  The court also found that "Marvell acted in a subjectively reckless manner with respect to the risk of infringing the subject patents."  *Id.* at 633.

On March 31, 2014, the trial court awarded supplemental and enhanced damages, increasing the judgment to $1,535,889,387.60.  Compl. ¶ 2 & n.1; *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.* ("*CMU II*"), No. CIV.A. 09-290, 2014 WL 1320154, at *26 (W.D. Pa. Mar. 31, 2014).  In settling on an enhanced damages figure, the trial court explained that "this award is sufficient to penalize Marvell for its egregious behavior and to deter future infringement activities." *CMU II*, 2014 WL 1320154, at *25; *accord* Compl. ¶ 3.  Marvell disputes the trial court's findings and has appealed to the Federal Circuit.  *See* ECF No. 54-6 (Marvell's notice of appeal dated May 14, 2014).  That appeal remains pending.  *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd*, No. 14-1492 (Fed. Cir.).

Plaintiffs allege that the $1.5 billion judgment has a high probability of materially and adversely affecting Marvell and its cash flows, including the company's ability to declare and pay dividends to shareholders.  Compl. ¶¶ 5-6.  Plaintiffs first cite Marvell's Form 8-K, filed on February 24, 2014, which states: "Developments in the CMU litigation could affect Marvell's ability to pay the dividend on March 27, 2014 under Bermuda law, where Marvell is incorporated." *Id.* ¶¶ 5, 135.  The operative Complaint, which Plaintiffs filed five months after the March 27 dividend was due, fails to mention that Marvell paid the dividend on March 27, 2014, as previously declared.  *See* ECF No. 54-10 (NASDAQ.com table indicating that Marvell paid the declared dividend on March 27, 2014).  Plaintiffs then cite Marvell's Form 10-K annual report, which the company filed on March 27, 2014.  Compl. ¶ 6; *see* ECF No. 54-1 (excerpts from Marvell's Form 10-K).  That report states: "if we are required to pay most or all of the damages awarded by the jury after all appeals have been exhausted, this could have a material adverse

4

United States District Court
Northern District of California

1   effect on our business, financial condition, results of operations and cash flows." Compl. ¶ 6. The

2   Form 10-K also indicates that Marvell "do[es] not believe a material loss is probable" as a result

3   of the *CMU* litigation. ECF No. 54-1 at 16. Since the Form 10-K's filing, Marvell has continued

4   to pay dividends to shareholders. *See* ECF No. 54-10 (NASDAQ.com table indicating that

5   Marvell paid previously declared dividends on July 2, 2014).

6   **B.    Procedural History**

7   On April 7, 2014, plaintiff Voss filed his class and derivative shareholder Complaint in this

8   Court. ECF No. 1. Plaintiff D'Arrigo did the same on June 2, 2014. No. 14-02523, ECF No. 1.

9   Soo too did plaintiffs James DiBiase and Marie DiBiase on July 16, 2014. No. 14-03214, ECF

10   No. 1. That same date, the Court issued an order granting the parties' stipulation to consolidate

11   the *Voss* and *D'Arrigo* actions. ECF No. 31. On August 6, 2014, the Court granted the motion to

12   consolidate the *DiBiase* action with the *Voss* and *D'Arrigo* actions, ordering Plaintiffs to file a

13   consolidated amended complaint. ECF No. 49.

14   Plaintiffs filed their Verified Consolidated Shareholder Derivative and Class Action

15   Complaint on August 15, 2014. ECF No. 52. The federal diversity statute, according to the

16   Complaint, provides the Court with subject matter jurisdiction. Compl. ¶ 11.[2] The Complaint lists

17   four causes of action: (1) breach of fiduciary duties of care, loyalty, and good faith, asserted

18   against all Defendants, *id.* ¶¶ 168-71; (2) breach of fiduciary duty for failing to maintain adequate

19   internal controls, asserted against the Individual Defendants only, *id.* ¶¶ 172-75; (3) unjust

20   enrichment, asserted against Sehat Sutardja, Pantas Sutardja, and Dai only, *id.* ¶¶ 176-79; and (4)

21

22   _____

    [2] The Court independently agrees. The presence of D'Arrigo, a citizen of France, *see* No.

23   14-02523, ECF No. 1 ¶ 13, on one side, and on the other side the presence of Gromer, a citizen of
    Germany, *see* Compl. ¶ 18, and Marvell, a citizen of Bermuda, *see id.* ¶ 16, do not defeat diversity

24   jurisdiction because the U.S. citizen plaintiffs are each citizens of different states than the U.S.
    citizen defendants, *see id.* ¶¶ 13, 15-17, 19-23; *see also Transure, Inc. v. Marsh & McLennan,*

25   *Inc.*, 766 F.2d 1297, 1298-99 (9th Cir. 1985) (holding that the presence of citizens of foreign states
    on both sides of the litigation does not destroy diversity jurisdiction where (1) there is a legitimate

26   controversy between diverse U.S. citizens and foreigners are additional parties; and (2) there is
    complete diversity as to the U.S. citizens); *Zenith Elecs. Corp. v. Kimball Int'l Mfg., Inc.*, 114 F.

27   Supp. 2d 764, 768 (N.D. Ill. 2000) (collecting cases).

28

Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

1   breach of duty of honest services, asserted against Sehat Sutardja, Pantas Sutardja, and Dai only,

2   *id.* ¶¶ 180-86.  It appears, then, that Plaintiffs assert a direct claim only in the first cause of action;

3   the remaining causes of action are framed as derivative claims.  *See* Mot. at 8 n.4.

4        In response to the Complaint, Defendants filed the instant Motion to Dismiss on September

5   4, 2014.  ECF No. 53.  Defendants concurrently filed a Request for Judicial Notice.  ECF No. 54.

6   On October 30, 2014, Plaintiffs opposed the Motion to Dismiss.  ECF No. 60 ("Opp.").  At the

7   same time, Plaintiffs filed their own Request for Judicial Notice.  ECF No. 62.  Defendants replied

8   on November 25, 2014.  ECF No. 65 ("Reply").  Defendants concurrently filed a Supplemental

9   Request for Judicial Notice, ECF No. 66, to which Plaintiffs partially objected on December 2,

10  2014, ECF No. 67.

11  **II.     LEGAL STANDARDS**

12       **A.     Rule 12(b)(6)**

13       Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

14  short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

15  that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  Rule 8(a) requires a

16  plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

17  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

18  pleads factual content that allows the court to draw the reasonable inference that the defendant is

19  liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

20  standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

21  defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling

22  on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

23  construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

24  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

25       The Court, however, need not accept as true allegations contradicted by judicially

26  noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look

27

28

Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

1  beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

2  motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

3  1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in

4  the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

5  curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and unwarranted

6  inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183

7  (9th Cir. 2004).

8      **B.      Rule 12(b)(1)**

9          A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

10  to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  While lack of statutory standing requires

11  dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires

12  dismissal for want of subject matter jurisdiction under Rule 12(b)(1).  *See Maya v. Centex Corp.*,

13  658 F.3d 1060, 1067 (9th Cir. 2011).  "A Rule 12(b)(1) jurisdictional attack may be facial or

14  factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack,

15  the challenger asserts that the allegations contained in a complaint are insufficient on their face to

16  invoke federal jurisdiction."  *Id.*  The Court "resolves a facial attack as it would a motion to

17  dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all

18  reasonable inferences in the plaintiff's favor, the court determines whether the allegations are

19  sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117,

20  1121 (9th Cir. 2014).  "[I]n a factual attack," on the other hand, "the challenger disputes the truth

21  of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for*

22  *Everyone*, 373 F.3d at 1039.  "In resolving a factual attack on jurisdiction," the Court "may review

23  evidence beyond the complaint without converting the motion to dismiss into a motion for

24  summary judgment."  *Id.*  The Court "need not presume the truthfulness of the plaintiff's

25  allegations" in deciding a factual attack.  *Id*

26

27                                                      7

28

1    Once a defendant has moved to dismiss for lack of subject matter jurisdiction under Rule

2    12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction.  *See Chandler v.*

3    *State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  The plaintiff carries that

4    burden by putting forth "the manner and degree of evidence required" by whatever stage of the

5    litigation the case has reached.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  At the

6    motion to dismiss stage, Article III standing is adequately demonstrated through allegations of

7    "specific facts plausibly explaining" why the standing requirements are met.  *Barnum Timber Co.*

8    *v. EPA*, 633 F.3d 894, 899 (9th Cir. 2011).

9    **C.      Leave to Amend**

10    If the Court determines that the complaint should be dismissed, it must then decide

11    whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave

12    to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

13    of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."

14    *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation

15    marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should

16    grant leave to amend even if no request to amend the pleading was made, unless it determines that

17    the pleading could not possibly be cured by the allegation of other facts."  *Id.* at 1130 (internal

18    quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing

19    amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

20    moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

21    (9th Cir. 2008).

22    **D.      Requests for Judicial Notice**

23    The Court generally may not look beyond the four corners of a complaint in ruling on a

24    motion to dismiss, with the exception of documents incorporated into the complaint by reference,

25    and any relevant matters subject to judicial notice.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763

26    (9th Cir. 2007); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).  Under the doctrine of

27

28

Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1  incorporation by reference, the Court may consider on a motion to dismiss not only documents

2  attached to the complaint, but also documents whose contents are alleged therein, provided the

3  complaint "necessarily relies" on the documents or contents thereof, and the documents'

4  authenticity and relevance are uncontested.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038

5  (9th Cir. 2010); *accord Lee*, 250 F.3d at 688-89.  The purpose of this rule is to "prevent plaintiffs

6  from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their

7  claims are based."  *Swartz*, 476 F.3d at 763 (alterations and internal quotation marks omitted).

8       The Court also may take judicial notice of matters that are either (1) generally known

9  within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by

10  resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Proper

11  subjects of judicial notice when ruling on a motion to dismiss include legislative history reports,

12  *see Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); court documents already in the

13  public record and documents filed in other courts, *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,

14  442 F.3d 741, 746 n.6 (9th Cir. 2006); and publicly accessible websites, *see Daniels-Hall v. Nat'l*

15  *Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

16  **III.    REQUESTS FOR JUDICIAL NOTICE**

17       The Court GRANTS Defendants' Request for Judicial Notice, ECF No. 54, which

18  Plaintiffs do not oppose.  Exhibits A to E and Exhibits K to R are all SEC filings.  *See* ECF Nos.

19  54-1, 54-2, 54-3, 54-4, 54-5, 54-11, 54-12, 54-13, 54-14, 54-15, 54-16, 54-17, 54-18.  These

20  documents are true and correct copies of SEC filings in the public record not subject to reasonable

21  dispute.  *See* Fed. R. Evid. 201(b); *see also City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,

22  880 F. Supp. 2d 1045, 1059 (N.D. Cal. 2012) (taking judicial notice of similar SEC filings); *In re*

23  *Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1060-62 (C.D. Cal. 2012) (same).

24  Several of these documents—Exhibits A, K to N, and P to Q, all of which are Marvell SEC Form

25  10-Ks—were attached as exhibits to the Complaint or incorporated by reference therein.  *See*

26  *Swartz*, 476 F.3d at 763.  In addition, Exhibits F to I are all documents filed in the *CMU* litigation.

27

28

United States District Court
Northern District of California

9

United States District Court
Northern District of California

*See* ECF Nos. 54-6, 54-7, 54-8, 54-9.  These documents are true and correct copies of documents filed publicly in other courts.  *See Reyn's Pasta Bella*, 442 F.3d at 746 n.6.  Finally, Exhibit J is a NASDAQ.com printout showing the history of Marvell's dividend payments since 2012.  *See* ECF No. 54-10.  This document is a proper subject of judicial notice.  *See In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1024 (C.D. Cal. 2008) (taking judicial notice of a LexisNexis report showing a company's daily stock prices as listed on NASDAQ); *see also Daniels-Hall*, 629 F.3d at 998-99 (taking judicial notice of information on a publicly available website).

The Court GRANTS Plaintiffs' Request for Judicial Notice, ECF No. 62, which Defendants do not oppose.  Exhibits 1 to 4 and Exhibit 6 are true and correct copies of publicly available court filings.  *See* ECF Nos. 61-1, 61-2, 61-3, 61-4, 61-6.  As a result, the Court may take judicial notice of them.  *See Reyn's Pasta Bella*, 442 F.3d at 746 n.6.  Exhibits 5, 7, and 8 are true and correct copies of SEC filings in the public record not subject to reasonable dispute.  *See* ECF Nos. 61-5, 61-7, 61-8.  Accordingly, the Court may take judicial notice of them.  *See In re Am. Apparel*, 855 F. Supp. 2d at 1060-62.

The Court GRANTS in part and DENIES in part Defendants' Supplemental Request for Judicial Notice, ECF No. 66, which Plaintiffs partially oppose, ECF No. 67.  The Court grants the motion with respect to Exhibit S, an SEC filing not subject to reasonable dispute, *see In re Am. Apparel*, 855 F. Supp. 2d at 1060-62; Exhibit T, Marvell's stock register, whose authenticity is not disputed and which Plaintiffs rely on in their Opposition (Opp. at 5 n.3), *see Pryor v. Warner/Chappell Music, Inc.*, No. CV 13-4344 RSWL AJWX, 2014 WL 690153, at *4 (C.D. Cal. Feb. 20, 2014); and Exhibits U and V, trial exhibits filed in the *CMU* litigation, *see Reyn's Pasta Bella*, 442 F.3d at 746 n.6.  The Court denies the motion as moot with respect to Exhibits W and X, the only two documents Plaintiffs challenge, *see* ECF No. 67, because the Court did not consider these two documents in reaching any of its conclusions.  *See Gallagher v. San Diego Unified Port Dist.*, No. 08-CV-886-IEG-RBB, 2009 WL 311120, at *3 n.3 (S.D. Cal. Feb. 6, 2009) (denying as moot a request for judicial notice where the court decided the issue "on an

independent basis").

## IV.   DISCUSSION

At the outset, Defendants argue that the laws of Bermuda, where Marvell is incorporated, govern Plaintiffs' claims in this lawsuit.  Mot. at 8, 11 n.8; Reply at 2-8.  Applying Bermuda law, Defendants move to dismiss Plaintiffs' Complaint on several bases.  In particular, Defendants contend that Plaintiffs cannot satisfy the requirements for bringing derivative claims under Bermuda law.  Mot. at 11-17.  Defendants contend further that Plaintiffs' purported direct claim can only be brought derivatively, and that, in any event, Plaintiffs lack Article III standing to pursue their direct claim because their asserted injury is too speculative.  *Id.* at 8-11; Reply at 14-16.  Defendants argue next that Plaintiffs' claims are barred by the exculpatory provision in Marvell's by-laws, which immunizes officers and directors for conduct that does not amount to "fraud or dishonesty."  Mot. at 18-21.  Lastly, Defendants assert that Plaintiffs' claims, which sound in fraud, fail to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  *Id.* at 22-23.

Plaintiffs, in response, argue that the laws of California—not Bermuda—apply to their claims.  Opp. at 7-13.  If Bermuda law applies, Plaintiffs concede that their derivative claims are barred.  *Id.* at 8, 12-13.  If California law applies, however, Plaintiffs maintain that they have adequately pleaded demand futility such that their derivative claims may survive.  *Id.* at 13-21.  As to their direct claim, Plaintiffs contend that they have asserted an actionable direct claim premised on an injury that is sufficiently imminent under Article III.  *Id.* at 22-25.  If the Court disagrees, Plaintiffs ask for a stay allowing them to convene a special meeting for the purpose of obtaining majority shareholder authorization to bring a derivative action.  *Id.* at 25-26.  Plaintiffs also dispute Defendants' remaining bases for dismissal and argue that the Court should refrain from dismissing this action because Marvell lacks representation by independent counsel.  *Id.* at 21-22, 27-30.

For the reasons stated below, the Court concludes that Bermuda applies; that Plaintiffs'

1    derivative claims must fail as a result; that Plaintiffs lack Article III standing to bring their direct

2    claim at this time; and that a stay is not warranted.  Accordingly, the Court need not address

3    Defendants' alternate bases for dismissal.  Finding no reason to refrain from deciding the motion,

4    the Court GRANTS Defendants' Motion to Dismiss.

5         **A.    Choice of Law**

6         A federal court sitting in diversity applies the choice of law rules of the forum state—here,

7    California.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).  To determine

8    which jurisdiction's substantive law to apply in a shareholder derivative action, California courts

9    look to the "internal affairs doctrine."  *See, e.g.*, *Vaughn v. LJ Int'l, Inc.*, 174 Cal. App. 4th 213,

10   222-27 (2009).  "The internal affairs doctrine is a conflict of laws principle which recognizes that

11   only one State should have the authority to regulate a corporation's internal affairs—matters

12   peculiar to the relationships among or between the corporation and its current officers, directors,

13   and shareholders—because otherwise a corporation could be faced with conflicting demands."

14   *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).  Under this doctrine, "the rights of shareholders

15   in a foreign company, including the right to sue derivatively, are determined by the law of the

16   place where the company is incorporated."  *Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir.

17   1998); *see also* Restatement (Second) of Conflict of Laws § 302 cmt. e (1971) (justifying the rule

18   because it provides "certainty, predictability and uniformity of result, protection of the justified

19   expectations of the parties and ease in the application of the law to be applied").

20        The California legislature has codified the internal affairs doctrine.  Cal. Corp. Code

21   § 2116; *see Villari v. Mozilo*, 208 Cal. App. 4th 1470, 1478 n.8 (2012) ("Corporations Code

22   section 2116 codifies [the internal affairs doctrine] in California.").  Section 2116 provides, in

23   relevant part:

24        The directors of a foreign corporation transacting intrastate business are liable to
          the corporation, its shareholders, creditors, receiver, liquidator or trustee in
25        bankruptcy for the making of unauthorized dividends, purchase of shares or
          distribution of assets or false certificates, reports or public notices or other violation
26        of official duty *according to any applicable laws of the state or place of
          incorporation or organization*, whether committed or done in this state or
27

28

Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

elsewhere.

Cal. Corp. Code § 2116 (emphasis added).

Plaintiffs do not dispute that their claims concern the internal affairs of the corporation. *See* Opp. at 7-13; *see also Lidow v. Super. Ct.*, 206 Cal. App. 4th 351, 363 (2012) (explaining that "the payment of dividends to shareholders . . . involve[s] matters of internal corporate governance and thus, fall[s] within a corporation's internal affairs" (citations omitted)).  Thus, applying section 2116 and the internal affairs doctrine, the Court finds that Plaintiffs' claims are governed by the laws of Bermuda, where Marvell is incorporated.  *See* Compl. ¶ 16; *see also, e.g.*, *Laborers' Local v. Intersil*, 868 F. Supp. 2d 838, 843-44 (N.D. Cal. 2012) (applying Delaware law in a shareholder derivative action against a Delaware corporation with principal place of business in California); *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1082, 1086-87 (N.D. Cal. 2003) (same); *Vaughn*, 174 Cal. App. 4th at 217, 225 (applying British Virgin Islands ("BVI") law in a shareholder derivative action against a BVI corporation with principal place of business in Hong Kong and an office in California).

Although Plaintiffs' Complaint presumes Bermuda law applies, *see* Compl. ¶¶ 153, 156, 166, 169, Plaintiffs argue in their Opposition that the laws of California—not Bermuda—apply to their claims, *see* Opp. at 7-13.  Plaintiffs reach this conclusion in two ways.  First, Plaintiffs contend that under the common law "governmental interest analysis," in which the internal affairs doctrine is but one factor to consider, California law applies because the state's "overwhelming interest" in having its laws applied in this case trumps Bermuda's "negligible" interest.  *Id.* at 8-12.[3]  Second, Plaintiffs argue that even if the internal affairs doctrine alone controls the analysis, a longstanding exception to that rule would allow the Court to apply California law instead.  *Id.* at 12-13.

_____

[3] California's governmental interest analysis involves three steps.  *See Vaughn*, 174 Cal. App. 4th at 228.  First, a court determines whether the two concerned states have different laws. Second, a court considers whether each state has an interest in having its law applied to this case. Third, a court applies the law of the state whose interests would be more impaired if its policy were subordinated to the policy of the other state.

13

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court disagrees.  To start, Plaintiffs err in suggesting that the governmental interest

2  analysis should apply to this case.  In general, the governmental interest analysis, which is a

3  product of the common law, *see McCann v. Foster Wheeler LLC*, 225 P.3d 516, 524 (Cal. 2010),

4  does not apply when the California legislature has passed a statute that unambiguously resolves

5  the choice of law issue, *see id.* at 527 (explaining that the "governmental interest mode of

6  analysis" is California's "methodology for resolving choice-of-law issues . . . in those instances in

7  which [an applicable statute] does not mandate application of another jurisdiction's [law]"); *see*

8  *also Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1128 (N.D. Cal. 2011) ("Where a

9  statute dictates the choice-of-law, the court need not apply a common law choice-of-law analysis."

10  (citing *Barclays Disc. Bank Ltd. v. Levy*, 743 F.2d 722, 725 (9th Cir. 1984))).  Section 2116,

11  which Plaintiffs fail to cite in their Opposition, is such a statute.  This provision of California law

12  unambiguously directs courts to apply the law of the jurisdiction of incorporation in suits

13  concerning the internal affairs of the corporation.  *See* Cal. Corp. Code § 2116.  As a result, the

14  Court need not perform a governmental interest analysis in this case.

15    The California Court of Appeal's decision in *Vaughn v. LJ International, Inc.*, 174 Cal.

16  App. 4th 213 (2009), provides an additional reason why the governmental interest analysis does

17  not apply here.  The appellant in *Vaughn* argued that, under the governmental interest approach,

18  California law should govern his shareholder derivative suit against a BVI corporation with little

19  other connection to the jurisdiction of incorporation.  *Id.* at 227.  The court disagreed.  After

20  invoking the internal affairs doctrine to apply BVI law, the court in *Vaughn* explained that "the

21  governmental interest approach has been applied almost exclusively in tort and contract cases, and

22  occasionally to statute of limitations issues." *Id.* at 227.  Indeed, the court there found "no

23  authority *actually applying* the governmental interest analysis to resolve choice of law in a

24  derivative action against the directors of a foreign corporation." *Id.* at 228.[4]  In the absence of any

25  _____

26    [4] In reaching this conclusion, the court in *Vaughn* rejected the "dictum" Plaintiffs cite from
*Grosset v. Wenaas*, 175 P.3d 1184, 1189 (Cal. 2008), which suggests that a court would undertake

27  a governmental interest analysis, including any effect of the internal affairs doctrine, to determine

14

28  Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

1    such authority, the court in *Vaughn* held the governmental interest approach "inapposite to a

2    shareholder derivative action involving the posture of the present case" because that approach

3    would "invariably result in the application of California law" in a case, such as this, "where the

4    jurisdiction of incorporation has little if any other contact with the company." *Id.* "That

5    predictable result," the court continued, "ignores the factors [of certainty, predictability, and

6    uniformity of result] identified by the Restatement which . . . are of great significance to corporate

7    directors and investors who do business across state and international borders." *Id.* at 228-29. As

8    the governmental interest approach's "protective purpose" is largely "inapplicable to a derivative

9    action, which is brought on behalf of the corporation rather than the individual citizens and

10   shareholders of the forum state," *id.* at 229, the Court agrees with *Vaughn* and declines to adopt

11   that approach in the instant case.

12            Plaintiffs' alternative argument—that "this case warrants an exception to the internal-

13   affairs doctrine," Opp. at 13—also fails. As a basis for this purported exception, Plaintiffs cite to

14   Witkin's treatise on California law. Specifically, Plaintiffs emphasize the following: "Another

15   basis for taking jurisdiction over actions involving management or other internal matters is

16   presented where the foreign corporation, though incorporated elsewhere, actually makes the local

17

18   _____

19   which jurisdiction's law to apply in a shareholder derivative action. *Vaughn*, 174 Cal. App. 4th at
     227-28. *Grosset*'s statement was indeed dictum because the California Supreme Court had no

20   occasion to decide the choice of law question in that case; the same result obtained under either
     California or Delaware law. *See Grosset*, 175 P.3d at 1197; *see also Cetacean Cmty. v. Bush*, 386

21   F.3d 1169, 1173 (9th Cir. 2004) ("A statement is dictum when it is made during the course of
     delivering a judicial opinion, but is unnecessary to the decision in the case and [is] therefore not

22   precedential." (alteration in original) (internal quotation marks and ellipsis omitted)).
              Plaintiffs' other citations fail for similar reasons. *See Oncology Therapeutics Network*

23   *Connection v. Va. Hematology Oncology PLLC*, No. C 05-3033 WDB, 2006 WL 334532, at *17
     (N.D. Cal. Feb. 10, 2006) (declining to decide whether "the 'internal affairs doctrine' *replaces* the

24   traditional 'governmental interest' test" because "neither party has adequately briefed the issue,"
     and, in any event, "the standard applied to determine an alter ego claim appears to be essentially

25   the same under California and Virginia law"); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 609
     F. Supp. 2d 938, 949-50 (N.D. Cal. 2009) (declining to decide whether "plaintiff's breach of

26   fiduciary duty claim is subject to the 'internal affairs' doctrine"), *rev'd and remanded*, 615 F.3d

27   1106 (9th Cir. 2010).

              15

28   Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1  state its principal place of business and has its records and offices there." 9 Witkin, Summary of

2  Cal. Law (10th), *Corporations* § 239 (2005) (citing Restatement, *supra*, § 313).  Having detailed

3  extensively Marvell's contacts with the state of California, *see* Opp. at 5-7, 9-11, Plaintiffs rely on

4  this language from Witkin's treatise to argue that the Court should apply California law.

5          In so relying, however, Plaintiffs conflate choice of law with the exercise of jurisdiction.

6  The cited proposition, as its plain language suggests, concerns only "taking jurisdiction over" an

7  action involving the internal affairs of a foreign corporation.  9 Witkin, *supra*, § 239.  It says

8  nothing about which jurisdiction's law to apply.  The proposition's supporting citation, section

9  313 of the Restatement, makes this point abundantly clear:

> This Section has to do only with limitations upon the exercise of judicial jurisdiction; it does not involve the question of what law governs the various aspects of a corporation's activities and existence.  Even when a court entertains a suit involving the internal affairs of a foreign corporation, it will, in accordance with the rules stated in this Chapter and in the absence of an applicable local statute, usually apply the local law of the state of incorporation in arriving at the ultimate decision of the case.

14  Restatement, *supra*, § 313 cmt. e.

15          That said, Witkin's treatise does state earlier: "In some situations, however, the local court

16  may, in the interest of justice, take jurisdiction over internal affairs *and apply the local law*,"

17  suggesting that an exception to the internal affairs doctrine may exist.  9 Witkin, *supra*, § 239

18  (emphasis added).  Plaintiffs cite two examples, also found in Witkin, of California Courts of

19  Appeal applying California law, rather than the law of incorporation, to claims against a

20  corporation with principal place of business in California.  *See* Opp. at 9 (citing *W. Air Lines, Inc.*

21  *v. Sobieski*, 191 Cal. App. 2d 399 (1961);[5] *Sharp v. Big Jim Mines*, 39 Cal. App. 2d 435 (1940)).

22

23          [5] *Sobieski*, the Court notes, gave rise to an additional exception to the internal affairs

24  doctrine for "pseudo-foreign" corporations for which more than half of the outstanding voting shares are held by California residents.  *See* Cal. Corp. Code § 2115 (codifying this exception);

25  *Wilson v. La.-Pac. Res., Inc.*, 138 Cal. App. 3d 216, 223 (1982) ("Section 2115 incorporates the policy reflected in *Sobieski* and applies it more generally, to all pseudo-foreign corporations

26  meeting the statutory criteria.").  Plaintiffs do not argue that this statutory exception applies; nor

27  could they.  Section 2115 is inapplicable because Marvell is listed on "the NASDAQ Global Market."  Cal. Corp. Code § 2115(c); *see* ECF No. 54-1 at 2 (SEC Form 10-K stating that Marvell

28

16

Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

These cases, however, are more than a half-century old, and the Court has independently found no modern authority actually invoking this exception to the internal affairs doctrine, let alone in the context of a shareholder derivative suit.[6]  On the contrary, the overwhelming weight of far more recent authority does not even mention the exception.  *See, e.g., Booth v. Strategic Realty Trust, Inc.*, No. 13-CV-04921-JST, 2014 WL 3749759, at *8 (N.D. Cal. July 29, 2014) (applying the internal affairs doctrine with no mention of any exception thereto); *Stockman-Sann v. McKnight*, No. SACV 12-1882 AG JPRX, 2013 WL 8284817, at *6 (C.D. Cal. Mar. 25, 2013) (same); *Copeland v. Lane*, No. 5:11-CV-01058 EJD, 2012 WL 4845636, at *4 (N.D. Cal. Oct. 10, 2012) (same); *Scouler & Co., LLC v. Schwartz*, No. 11-CV-06377 NC, 2012 WL 1502762, at *3 (N.D. Cal. Apr. 23, 2012) (same); *Laborers' Local*, 868 F. Supp. 2d at 844 (same); *In re Sagent Tech.*, 278 F. Supp. 2d at 1086-87 (same); *Charter Twp. of Clinton Police & Fire Ret. Sys. v. Martin*, 219 Cal. App. 4th 924, 934 (2013) (same); *Villari*, 208 Cal. App. 4th at 1478 n.8, 1479 n.9 (same). The Court finds this line of authority more persuasive.

Consequently, in the interests of certainty, predictability, and uniformity of result, the Court concludes that the internal affairs doctrine applies to the instant case and that Bermuda law—the law where Marvell is incorporated—therefore governs Plaintiffs' claims.

---

is listed on NASDAQ); *see also In re Sagent Tech.*, 278 F. Supp. 2d at 1087 n.6 (explaining that section 2115 does not apply to foreign corporations "listed or traded on a national exchange").

[6] Although the court in *Vaughn* alluded to this exception, the *Vaughn* court found it "inapplicable in the present case" because "it cannot be said that [the corporation's] principal operations, let alone its books and records, are located in California or elsewhere in the United States." 174 Cal. App. 4th at 224.  Further, this Court acknowledges that in *State Farm Mutual Automobile Insurance Co. v. Superior Court*, 114 Cal. App. 4th 434, 448 (2003), the Court of Appeal noted that "a California court can apply local law to a foreign corporation that has sufficient contacts with the state, such as conducting business or having an office here."  Yet the court in *State Farm* did not apply this exception, and the case on which the *State Farm* court relied for that proposition, which Plaintiffs do not mention, is of dubious import.  *See Valtz v. Penta Inv. Corp.*, 139 Cal. App. 3d 803, 807 (1983) (questioning "the validity of this internal affairs doctrine").  In all events, *Valtz* is inapposite because the court there held that the applicable California statute "does not address an internal affair."  *Id.*  As stated above, however, Plaintiffs here do not contest that their claims involve Marvell's internal affairs.

17

**B.**     **Plaintiffs' Ability to Pursue Derivative Claims**

The parties agree that "Bermuda follows the 'rule in *Foss v. Harbottle*.'"  *Erie Cnty. Emps. Ret. Sys. v. Isenberg*, No. CIV.A. H-11-4052, 2012 WL 3100463, at *3 (S.D. Tex. July 30, 2012) (citing *Clark v. Energia Global Int'l, Ltd.*, [2001] S.C. 173 at 10 (Berm. Sup. Ct.).  This English common law rule has its origins in a namesake 1843 court case.  *See Foss v. Harbottle*, 67 Eng. Rep. 189 (Ch. 1843).  Under the rule in *Foss*, "the proper plaintiff in a suit addressing a wrong done to a company is the company itself," not the shareholder.  *Erie Cnty.*, 2012 WL 3100463, at *3.  Indeed, the rule provides that "a shareholder may ordinarily bring a derivative claim on behalf of a corporation only if a simple majority of the shareholders could not ratify the conduct on which the suit is based."  *Eshelman v. Orthoclear Holdings, Inc.*, No. C 07-1429 JSW, 2009 WL 506864, at *10 (N.D. Cal. Feb. 27, 2009).  In other words, "no individual shareholder can maintain an action if the alleged wrong is capable of ratification by a simple majority of shareholders."  *City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1299 (D.C. Cir. 2009).  As such, the rule in *Foss* "is subject to four 'exceptions' which permit a shareholder to bring suit when the conduct at issue is: (1) *ultra vires*; (2) requires a special majority to ratify; (3) infringes a shareholder's personal rights; or (4) qualifies as a 'fraud on the minority.'"  *In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d 94, 98 (D.N.H. 2004).

Although Plaintiffs' Complaint alleges that three of these exceptions have been satisfied, *see* Compl. ¶ 154 (infringement of personal rights); *id.* ¶ 156 (ultra vires); *id.* ¶ 166 (fraud on the minority), Plaintiffs never allege that the supposed breaches of duty giving rise to this action "were incapable of ratification by a majority of shareholders," *City of Harper Woods*, 589 F.3d at 1296.  Furthermore, Plaintiffs make no argument in support of any of the exceptions in their Opposition.  *See* Opp. at 8-13, 25 & n.23.  Not only do Plaintiffs accept the declarations of Defendants' Bermuda law experts stating that none of the exceptions apply here, *see* Opp. at 8, 13; *see also* ECF No. 53-2 ("Moore Decl."); ECF No. 53-3 ("Potts Decl."), but Plaintiffs also concede that they have no remedy for their derivative claims under the rule in *Foss*, *see, e.g.*, Opp. at 8

18

1   (acknowledging that "the application of Bermuda law would leave Plaintiffs with no remedy"); *id.*

2   at 12 ("Applying Bermuda law would deprive Marvell of any remedy . . . .").  At the motion to

3   dismiss stage, Plaintiffs' concessions are sufficient.  *See, e.g.*, *Vai v. Wells Fargo Bank, N.A.*, No.

4   C-13-0294 EMC, 2013 WL 4045932, at *1 (N.D. Cal. Apr. 5, 2013) (granting motion to dismiss

5   where "Plaintiffs concede that they have not set forth a claim").

6           Accordingly, the Court concludes that Plaintiffs have failed to state a derivative claim for

7   relief under Bermuda law.  Because Plaintiffs could conceivably allege additional facts plausibly

8   establishing that their derivative claims satisfy one of the exceptions to the rule in *Foss*, the Court

9   dismisses these claims with leave to amend.  *See Lopez*, 203 F.3d at 1127 (holding that "a district

10  court should grant leave to amend . . . unless it determines that the pleading could not possibly be

11  cured by the allegation of other facts" (internal quotation marks omitted)).

12          **C.      Plaintiffs' Standing to Pursue Direct Claims**

13          As indicated above, Defendants argue first that Plaintiffs' direct claim for interference with

14  Plaintiffs' right to dividends is really not a direct claim at all.  Mot. at 8-10 (citing Compl. ¶¶ 2,

15  171).  Under the English common law rule against "reflective loss," which Bermuda follows,

16  shareholders have no direct claim where the loss sought to be recovered is merely reflective of that

17  suffered by the company.  *See* Moore Decl. ¶¶ 75-78; Potts Decl. ¶¶ 26-28.  Defendants maintain

18  that Plaintiffs' "claimed injury is a classic example of a reflective loss because any 'likely

19  diminution in dividend . . . is merely a reflection of the loss suffered by the company.'"  Mot. at 9

20  (ellipsis in original) (quoting *Prudential Assurance Co. Ltd. v. Newman Indus. Ltd. (No. 2)*, [1982]

21  1 Ch. 204, 222-23 (Eng. C.A.)).  As a result, Defendants argue, Plaintiffs have at most stated a

22  derivative claim, which fails under the rule in *Foss*.

23          The Court, however, need not decide whether Plaintiffs' "right to dividends" allegation

24  properly states a direct claim under Bermuda law.  This is so because the Court agrees with

25  Defendants' alternative argument: even if Plaintiffs could state a direct claim under Bermuda law,

26  Plaintiffs' claimed injury is too speculative for purposes of Article III.  Mot. at 10-11; Reply at 15-

27

28

Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

16.

A federal court must ask whether a plaintiff satisfies the "case or controversy" requirement of Article III of the U.S. Constitution.  "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (internal quotation marks omitted).  To establish Article III standing, a plaintiff must allege: injury-in-fact that is (1) concrete and particularized, as well as actual and imminent; (2) fairly traceable to the challenged action of the defendant; and (3) redressable by a favorable ruling.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.  At the motion to dismiss stage, "a plaintiff need only show that the facts alleged, if proven, would confer standing." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010).

With respect to allegations of future injury, the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly* impending to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper*, 133 S. Ct. at 1147 (brackets and internal quotation marks omitted).  "Although 'imminence' is concededly a somewhat elastic concept," the Supreme Court has explained, "it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Lujan*, 504 U.S. at 564 n.2 (internal quotation marks omitted).  Article III demands "that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Id.*

In the instant case, the Court concludes that Plaintiffs have failed to allege that their claimed future injury is "*certainly* impending." *Clapper*, 133 S. Ct. at 1147 (internal quotation marks omitted).  Quoting from Marvell's Form 10-K annual report, which the company filed with the SEC on March 27, 2014, Plaintiffs allege only that the ongoing *CMU* litigation "*could* have a material adverse effect on [Marvell's] business, financial condition, results of operations and cash

20

flows."  Compl. ¶ 6 (emphasis added).  Since that filing, however, Marvell has continued to pay dividends to shareholders.  *See* ECF No. 54-10 (NASDAQ.com table indicating that Marvell paid previously declared dividends on July 2, 2014).  Plaintiffs do not contend otherwise.  Nor do Plaintiffs dispute that their claimed injury would, as of now, be the product of a series of hypotheticals.  Indeed, Plaintiffs' alleged injury would come to pass only (1) if the $1.5 billion judgment against Marvell is upheld in its entirety on appeal; (2) if that judgment materially affects Marvell's ability to declare or pay dividends; and (3) if Marvell nevertheless declares a dividend and then fails to pay it.  Far from being "*certainly* impending," this claimed injury is "too speculative for Article III purposes."  *Lujan*, 504 U.S. at 564 n.2.  Plaintiffs' allegations of Marvell embarking on a stock repurchase plan, *see* Compl. ¶¶ 136-39, the effect of which, if any, depends on the outcome of the pending *CMU* litigation, do not render their alleged injury any less speculative.

Consequently, the Court concludes that Plaintiffs lack Article III standing at this time to pursue their direct claim.  Because Plaintiffs could allege additional facts plausibly establishing that their claimed injury is not too speculative for purposes of Article III, the Court dismisses this claim with leave to amend.  *See Lopez*, 203 F.3d at 1127.

**D.      Plaintiffs' Additional Requests**

The Court DENIES Plaintiffs' request for a stay to allow them to convene a special meeting under section 36 of Marvell's by-laws.  *See* Opp. at 25-26; *see also In re Merrill Lynch & Co., Inc., Sec., Derivative & ERISA Litig.*, 597 F. Supp. 2d 427, 431 (S.D.N.Y. 2009) (declining to stay rather than dismiss without prejudice pending the board's response to shareholder demand).  The Court also DENIES Plaintiffs' request to hold their "right to dividends" direct claim in abeyance pending the resolution of Marvell's appeal to the Federal Circuit in the *CMU* litigation.  *See* Opp. at 25 n.22.  The Court need not burden its docket with a stay or by holding any of Plaintiffs' dismissible claims in abeyance pending further action.  *See Erie Cnty.*, 2012 WL 3100463, at *9 (dismissing plaintiff's shareholder derivative action without leave to amend where plaintiff could not satisfy an exception to the rule in *Foss* under Bermuda law).  As stated in Part

Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

V, *infra*, Plaintiffs are free to voluntarily dismiss any or all of their claims without prejudice pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure prior to the Court-imposed thirty-day deadline for amending Plaintiffs' Complaint.

Lastly, the Court DENIES Plaintiffs' request not to consider Defendants' arguments because Marvell lacks representation by "independent counsel." *See* Opp. at 27-30. The Court is well aware of the significant concerns that may arise when a corporation and its directors are represented by the same counsel in shareholder derivative suits. *See, e.g.*, *Forrest v. Baeza*, 58 Cal. App. 4th 65, 74 (1997) ("Current case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud."). Although Plaintiffs do not seek to disqualify Quinn Emanuel from representation, *see* Opp. at 28 n.26, Marvell would be advised to obtain independent counsel in the future, *see In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1190 (N.D. Cal. 1993) (ordering corporation to "retain independent counsel having no prior relationship with the corporation or the individual defendants" before proceeding with a settlement). At this stage of the litigation, however, the Court is satisfied that any potential conflict which may exist has no bearing on the Court's conclusion that, as a matter of law, Plaintiffs' claims must be dismissed. *See Respler ex rel. Magnum Hunter Res. Corp. v. Evans*, No. CV 13-1097-SLR, 2014 WL 631668 (D. Del. Feb. 18, 2014) ("[I]n derivative actions, there exists no conflict of interest between a corporation and individual director defendants at the motion to dismiss stage, therefore, a law firm may represent all defendants without impropriety.").

## V.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss with leave to amend. Should Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, Plaintiffs shall do so within thirty (30) days of the date of this Order. Failure to meet the thirty-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiffs' claims. Should Plaintiffs wish to avoid such a dismissal with prejudice of any claim, Plaintiffs may voluntarily dismiss any or all

22

claims without prejudice under Rule 41(a)(1) of the Federal Rules of Civil Procedure before the

thirty-day deadline for amendment has passed.  Plaintiffs may not add new causes of action or

parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal

Rules of Civil Procedure.

The Court also:

- GRANTS Defendants' Request for Judicial Notice;
- GRANTS Plaintiffs' Request for Judicial Notice;
- GRANTS in part and DENIES in part Defendants' Supplemental Request for Judicial Notice;
- DENIES Plaintiffs' request for a stay;
- DENIES Plaintiffs' request to hold their "right to dividends" direct claim in abeyance; and
- DENIES Plaintiffs' request not to consider Defendants' arguments because Marvell lacks representation by "independent counsel."

**IT IS SO ORDERED**.

Dated: January 26, 2015

_Lucy H. Koh_
LUCY H. Koh
United States District Judge

Case Nos.: 14-CV-01581-LHK; 14-CV-02523-LHK; 14-CV-03214-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California